## CRAIG *v.* LEITENSDORFER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued October 12, 13, 1887. — Decided October 31, 1887.

If an official act of an executive officer in the Land Office is challenged for error of law, or for fraud in a judicial proceeding between private parties, in a court of the United States, no jurisdiction attaches unless the controversy relates to rights existing in the parties, or one of them, derived from the act, and unless definite relief or redress under some known head of judicial jurisdiction is demanded.

The acts of June 21, 1860, 12 Stat. 71, and February 25, 1869, 15 Stat. 275, having referred to the Land Office and the Department of the Interior the adjustment of the claims of settlers within the Las Animas grant in Colorado, and their definition by the prescribed surveys and plats, and of all questions of possession and of boundary and of conflict, the free course of that administration, within the limit of the law, cannot be interrupted or interfered with by the judicial power.

If the plaintiff's contention is well founded that the duty of the Commissioner of the General Land Office to take up, hear and determine his appeal exists, that duty, so far as relates to entering upon its performance, is strictly ministerial, and his remedy is at law, by mandamus, and not in equity.

The controversy in this case being confined to the conflicting claims of actual settlers, "holding possession under titles or promises to settle," made by Cornelio Vigil and Ceran St. Vrain, and established under the provisions of the acts of June 21, 1860, 12 Stat. 71, and February 25, 1869, 15 Stat. 275; and it appearing from the pleadings, as amended, that the plaintiff below did not aver an equitable interest in himself in the lands which were so established in favor of the defendant, and that the only remedy, which he sought, was to have it judicially determined that the defendant's title was obtained by means of the fraudulent act

of an executive officer in the Land Office, whereby the plaintiff was illegally deprived of a right of appeal from the decision of that officer touching his own claims; *Held*, That the pleadings presented no question to give a Circuit Court jurisdiction in equity over the case.

UNDER the treaty with Mexico of Guadalupe Hidalgo, Cornelio Vigil and Ceran St. Vrain claimed title, under a Mexican grant made in 1843, to a large tract of land embraced within the Huerfano, Pisipa, and Cucharos Rivers to their junction with the Arkansas and Animas, known as the Las Animas grant, and supposed to cover and include about 922 square leagues, lying in the Territory of New Mexico, but within the limits of the present State of Colorado, and equivalent to four millions of acres.

By the act to confirm certain private land claims in the Territory of New Mexico, approved June 21, 1860, 12 Stat. 71, Congress confirmed the claim of Vigil and St. Vrain, but only to the extent of eleven square leagues to each of said claimants. By the second section of that act it was provided "that in surveying the claims of said Cornelio Vigil and Ceran St. Vrain the location shall be made as follows, namely: The survey shall first be made of all tracts occupied by actual settlers holding possession under titles or promises to settle, which have heretofore been given by said Vigil and St. Vrain, in the tracts claimed by them, and after deducting the area of all such tracts from the area embraced in twenty-two square leagues, the remainder shall be located in two equal tracts, each of square form, in any part of the tract claimed by the said Vigil and St. Vrain selected by them; and it shall be the duty of the Surveyor General of New Mexico immediately to proceed to make the surveys and locations authorized and required by the terms of this section."

The fourth section of the act provides "that the foregoing confirmation shall only be construed as quitclaims or relinquishments on the part of the United States, and shall not affect the adverse rights of any other person or persons whomsoever."

This statute was amended by the act of February 25, 1869, 15 Stat. 275, 440, as follows:

"CHAP. XLVII. — *An Act to amend an act entitled 'An Act to confirm certain private Land Claims in the Territory of New Mexico.'*

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the exterior lines of the Cornelio Vigil and *Cram* St. Vrain claims of eleven leagues each, subject to claims derived from said parties as confirmed by the act of Congress approved twenty-first June, eighteen hundred and sixty, United States Statutes, volume twelve, page seventy-one, shall be adjusted according to the lines of the public surveys, as nearly as practicable, with the limits of said claims, yet in as compact a form as possible; and the claims of all actual settlers upon the tracts heretofore claimed by the said Vigil and St. Vrain, holding possession under titles or promises to settle, which have been made by said Vigil and St. Vrain, or their legal representatives, prior to the passage of this act, who may establish their claims within one year from the passage of this act, to the satisfaction of the register and receiver of the proper land district, shall in like manner be adjusted according to the subdivisional lines of survey, so as to include the lands so settled upon or purchased, and the areas of the same shall be deducted and excluded from the adjusted limits of the claims of said Vigil and St. Vrain respectively; and the claims of all other actual settlers falling within the limits of the located claims of Vigil and St. Vrain shall be adjusted to the extent which shall embrace their several settlements upon their several claims being established either as preëmption or homesteads, according to law; and for the aggregate of the areas of the latter class of claims the said Vigil and St. Vrain, or their legal representatives, shall be entitled to locate a like quantity of public lands, not mineral, according to the lines of the public surveys, and not to exceed one hundred and sixty acres in one section.

"SEC. 2. *And be it further enacted,* That it shall be the duty of the general land office to cause the lines of the public surveys to be run in the regions where a proper location would place the said Vigil and St. Vrain claims, and that the expense of the same shall be paid out of any moneys in the treasury

not otherwise appropriated; yet, before the confirmation of the said act of June twenty-first, eighteen hundred and sixty, shall become legally effective, the said Vigil and St. Vrain, or their legal representatives, shall pay the cost of so much of said surveys as enures to their benefit respectively, and that all settlers of the said third class, whose claims may be adjusted as valid, shall have the right to enter their improvements by a strict compliance with the preëmption or homestead laws.

" Sec. 3. *And be it further enacted,* That upon the adjustment of the Vigil and St. Vrain claims according to the provisions of this act, it shall be the duty of the surveyor general of the district to furnish proper approved plats to said claimants, or their legal representatives, and so in like manner to said derivative claimants, which shall be evidence of title, the same to be done according to such instructions as may be given by the Commissioner of the general land office.

" Sec. 4. *And be it further enacted,* That immediately upon running the lines as provided in section second of this act, the surveyor general of said district shall notify the said Vigil and St. Vrain, or their agents or legal representatives, of the fact of such survey being made, and said claimants shall, within three months after notice of such survey, select and locate their said claims in accordance with such survey and the provisions of this act and of the act to which this is amendatory, so far as the same is not changed by this act, and shall within said time furnish the surveyor general with the description of such location, specifying the lines of the same. And the party failing to make such selection and location, in such manner and within such time, shall be deemed and held to have abandoned their claim, and their rights and equities under this act, and the act to which this is amendatory, shall cease and terminate.

" Sec. 5. *And be it further enacted,* That in case of the neglect or refusal of the said Vigil and St. Vrain, or either of them, to accept of the provisions of this act, and the act to which this is amendatory, and to locate their said claim, as provided therein, no suit shall be brought or proceedings insti-

tuted in any of the courts of the United States, by such party or by any one claiming through or under them, to establish or enforce said claims, or for any cause of action founded upon the same, after six months from the passage of this act."

The time fixed by § 1 of the last recited act for establishing the derivative claims was extended by a joint resolution of April 28, 1870, 16 Stat. 373, 663, by which it was directed that the act should be so construed " as to authorize the presentation of such derivative claims within one year from the completion and approval of the subdivisional surveys contemplated by said act of twenty-fifth February, eighteen hundred and sixty-nine."

In pursuance of the act of February 25, 1869, and within the time limited by the joint resolution of April 28, 1870, there were presented to Irving W. Stanton and Charles A. Cook, the register and receiver at Pueblo, Colorado, claims on behalf of about thirty-nine derivative claimants to lands within the limits of the Las Animas grant, covering in all more than $183,553\frac{85}{100}$ acres; among them was the claim of William Craig for 127,000 acres, and that of Thomas Leitensdorfer for about 16,000 acres, which were filed on the 23d of October, 1872. The register and receiver acted upon all the claims, rejecting that of Leitensdorfer and twenty-two others, amounting to more than $85,939\frac{32}{100}$ acres. They decided favorably, in whole or in part, on thirteen claims. To twelve of these claimants they allowed $24,362\frac{98}{100}$ acres; the remaining $73,251\frac{55}{100}$ acres were awarded to Craig. The decisions of these officers upon these claims bear date February 23, 1874, and were immediately reported to the General Land Office. Nineteen of the claimants, whose claims had been rejected, and among them Leitensdorfer, appealed from the decisions in favor of Craig and against themselves, respectively. The Commissioner of the General Land Office entertained the appeals, so far as to decide that an appeal would lie in such cases, and from that decision Craig appealed from the Commissioner of the General Land Office to the Secretary of the Interior. This appeal was entertained, and the Secretary of the Interior rendered a decision sustaining the authority of the Commissioner of the Gen-

eral Land Office to entertain and determine the appeals from the register and receiver.

About the 25th of May, 1875, Craig applied to the President for an order directing that the Surveyor General of Colorado be required to issue a plat of the survey of the land awarded to Craig by the decision of the register and receiver. Being advised by the Attorney General, to whom the matter was referred, that under the terms of the acts of Congress relating to the subject the decisions of the register and receiver were final, from which no appeal would lie to the Commissioner, 15 Opinions Attorneys General 94, the President, on March 2, 1877, made an order directing the Commissioner of the General Land Office to instruct the Surveyor General of Colorado to deliver to Craig an approved plat of the land adjudged to him by the register and receiver of the Pueblo land district, in the State of Colorado, dated February 23, 1874. The Commissioner of the General Land Office, on March 7, 1877, instructed the Surveyor General of Colorado to prepare a plat of the lands specified and awarded by the register and receiver to Craig.

Before that plat was delivered Leitensdorfer, on May 4, 1877, filed his bill in equity in the Circuit Court of the United States for the District of Colorado, against William L. Campbell, the Surveyor General of the United States for Colorado, and Craig. In this bill he set out the matters above stated, and in addition thereto alleged that his own title was derived by mesne conveyances from Eugene Leitensdorfer, to whom Vigil and St. Vrain had conveyed an undivided one-sixth of the entire grant to them, which would have amounted to about 682,724½ acres if the whole grant had been confirmed, but which he had reduced to twenty-five sections, amounting to about 16,000 acres, to correspond with the reduced grant as confirmed by act of Congress.

The bill further alleged that the reduced tract thus claimed by the complainant before the register and receiver was in or near the valleys of the Las Animas or Purgatoire River and tributaries, in Pueblo land district, Las Animas County, Colorado, naming and identifying certain sections and half

sections as composing it; and admitted that the claim of the complainant, as thus reduced, did not conflict on the ground with the derivative claim of Craig.

The bill further alleged that the complainant produced evidence before the register and receiver to establish, in addition to the preceding allegations of his bill, "the continuous inhabitancy and cultivation of his claim by himself since May, 1862, which inhabitancy and cultivation still continue."

The bill also alleged that the final delivery by the Surveyor General of the plat of survey of the derivative claims of Craig, as ordered by the President, would be merely a ministerial act of the Surveyor General, and therefore the subject of an injunction; that such plats, under § 3 of the act of February 25, 1869, could only issue after the final adjustment of the whole of said confirmation of twenty-two leagues, and of the several derivative claims constituting the same, and that said plats, when so furnished, would be evidence of title, and would divest the United States of the fee simple in favor of the derivative claimants receiving such plats; "that the plat ordered to be delivered by the Surveyor General to or for Craig would leave no part of said confirmation applicable to complainant's claim or the claims of the other derivative claimants whose appeals are now pending before the Commissioner, and would, in fact, preclude the Commissioner from considering the appeals of complainant and of the other derivative claimants; that complainant's claim is not in conflict on the ground with Craig's claim, but is many miles distant, and the mass of the derivative claims under Vigil and St. Vrain, though greatly exceeding the quantity confirmed, are competitors for area, but not for specific locations; that for these reasons the delivery of Craig's plat, or of the plat of any derivative claim whatever, before the final decision by the Commissioner and Secretary of the said appeals now pending before the Commissioner, and the final adjustment by them of the whole mass of said derivative claims, would be against equity and the rights of complainant and other appellants in said appeals, and would inflict on complainant and said appellants irreparable injury."

The prayer of the bill was for a perpetual injunction to restrain the delivery of the plat and survey of the derivative claim of Craig "until. the appeals of complainant and of the other derivative claimants under them, now pending before the Commissioner of the General Land Office, shall be tried and finally and adjudged on their merits, under the direction of the Secretary of the Interior, according to law, and until it shall appear by such final judgment that said Craig, or other derivative claimants under said Vigil and St. Vrain, or either, are entitled to plats as evidence of title;" and also for an injunction to the same effect in the mean time.

The bill also contained a general allegation to the effect that the register and receiver were corrupted by Craig, and fraudulently induced to make the award in his favor.

On the 21st of May, 1877, a temporary injunction was granted as prayed for, on certain conditions, one of which was, that the complainant, within thirty days, should "commence proceedings in the proper court of the District of Columbia, having for their object an order on the General Land Office to hear and determine the appeals mentioned and described in the said bill of complaint as having been taken by the said complainant from the decision of the register and receiver of the land office at Pueblo, in respect to the lands described in the said bill."

On the 25th of June, 1877, an affidavit was filed showing that, on the 19th of June, the complainant had caused to be filed in the Supreme Court of the District of Columbia, a petition and affidavit for a mandamus against the Commissioner of the General Land Office, praying for a writ commanding him to proceed to hear and determine the said appeals.

On July 13, 1877, the present cause was heard on a demurrer to the bill, and on a motion to dissolve the injunction, when an order was made dissolving the injunction and sustaining the demurrer, with leave to the complainant to file an amended and supplemental bill, which he accordingly did. That bill, filed on October 6, 1877, reciting all the matters contained in the original bill, alleged in addition that, in the Supreme

Court of the District of Columbia, on July 3, 1877, the motion of the complainant for a rule on the Commissioner of the General Land Office to show cause why the writ of mandamus should not issue against him, to require him to proceed with the hearing of the appeals alleged to be pending before him, was denied by that court at special term, on the ground, among others, that no appeal lay to the Commissioner of the General Land Office from such decisions, and that he did not appeal from said judgment because he was advised by counsel that no appeal would lie from such a judgment.

The bill further alleged that, after the dissolution of the injunction, the Commissioner of the General Land Office delivered to Craig an approved plat of the survey of the lands according to the area allowed to him by the register and receiver at Pueblo.

The bill reiterated the charges of corruption and fraud as against Craig and the register and receiver in the original bill, and further showed, " that, for the reasons hereinbefore stated, said duplicate plats of defendant Craig are intrinsically illegal and void *ab initio*, and that Craig had, or has, no title to said lands, St. Vrain having sold his interest before Craig purchased; that the order of the President, which said plats are intended to enforce, is, also, for reasons hereinbefore stated, intrinsically illegal and void *ab initio*, and was granted under the erroneous belief by the President that no controversy existed respecting the quantity of land embraced in said plats; that said plats were issued in mistake of law and fact, and leave no land applicable to the derivative claims of your orator and the other said appellants before the Commissioner of the General Land Office, and, in fact, prevent him from trying their appeals now lawfully pending before him, and are in the nature of a cloud on the titles of your orator and the said appellants to their respective derivative claims; and that your orator fears said duplicate plats, if left uncancelled, would cause irreparable mischief to him and to all the other said appellants before the said Commissioner."

The prayer of the amended bill, therefore, was, that " the approved plats of the derivative claim of defendant, William

Craig, signed by defendant Campbell, on the 26th of May, 1877, be decreed void from the beginning, and that said defendant, William Craig, be forever enjoined from prosecuting any suit in law or equity on said approved plat or plats as evidence of title, or that Craig be adjudged as holding the same in trust for plaintiff and other derivative claimants, and that defendant, William Craig, and agents, and defendant, William L. Campbell, as United States Surveyor General of Colorado, and his successors in office, and all under them, be ordered, within a time to be limited by this court, to deliver the said plats to the court, and that the said plats be thereupon cancelled, and he prays for all other general and special relief applicable to the case."

To this amended and supplemental bill, Campbell and Craig filed separate demurrers. The demurrer of Campbell was sustained, and the bill as to him ordered to be dismissed. The demurrer of Craig was overruled, and thereupon, on the 7th of October, 1878, Craig filed his answer to the amended bill.

The answer of Craig denied the title of Leitensdorfer to any interest in the land, and asserted the title of Craig himself to the land awarded to him by the decision of the register and receiver; it denied all charges of fraud and corruption against them and himself; and claimed that the award and decision of the register and receiver, under the act of Congress of February 25, 1869, was final and conclusive, subject to no appeal to the Commissioner of the General Land Office, or to the Secretary of the Interior, and set up the decision and judgment of the Supreme Court of the District of Columbia, dismissing the application for a mandamus, as a conclusive judgment on the question.

A replication was filed to this answer, and the cause being put at issue a large amount of proof was taken, consisting of documentary evidence and the testimony of witnesses.

It further appeared that after the 4th of March, 1877, when a new administration came into office, an application was made to the Secretary of the Interior on behalf of the complainant, asking for a stay of proceedings under the order of the President, and that the matter might be reopened for hearing be-

fore the Commissioner of the General Land Office on the appeal from the decision of the register and receiver. This application was referred to the Attorney General, who gave an opinion that the official acts of the officers of the preceding administration could not be reviewed by their successors in office. 15 Opinions Attorneys General, 208.

On the 8th of January, 1878, a patent was issued by the United States to William Craig, and to his heirs and assigns forever, for the land included within the approved plat, in conformity, as it recited, with § 2447 of the Revised Statutes of the United States, and with the stipulation that, in virtue of the provisions of that section, the patent " shall only operate as a relinquishment of title on the part of the United States, and shall in no manner interfere with any valid adverse right to the same land, nor be construed to preclude a legal investigation and decision by the proper judicial tribunal between adverse claimants to the same land."

On January 30, 1879, before final hearing, the complainant dismissed the bill and amended bill so far as by the prayer it was sought to hold the defendant Craig liable as trustee for the complainant of the title to the lands conveyed to him.

The opinion and decision of the register and receiver in favor of Craig's claim recited the grounds of the award as follows: " His claim does not rest wholly upon the shadowy foundation of uncertain and vague promises, but is backed by conveyances which remove all suspicion or doubt from his asserted rights, and in our opinion cannot be postponed to any other claim than those above recited. If his claim rested on promises to settle only, it might be said that the promises dated as far back as 1855, and the month of March of that year; that he went on the land promised; that he offered his resignation in the army in consequence of it; that it was not accepted; that in December, 1862, he was appointed agent for the grant by St. Vrain, and then again resigned, and was refused acceptance; that in the spring of 1863 he began the improvement of his land, finally got out of the army in 1864, and moved on the land, where he has since resided continuously, and has expended $200,000 in improvements thereon;

the patent deeds of St. Vrain showing the extent of his rights — deeds which appear to have been duly recorded soon after execution — thus preventing any one being deceived as to the property claimed by him."

The decision of the register and receiver against the claim of Leitensdorfer was based upon these grounds, viz.: that there was no sufficient proof of the paper title by which he claimed an undivided one-sixth of the original Mexican grant; that that paper title, even if proven, would not entitle him to anything as against actual settlers, but only to one-sixth of any surplus which might be ascertained after satisfying the claims of that class; and that Leitensdorfer was not entitled to claim as an actual settler, even supposing that he had taken possession of a particular location, for the reason that he did not show himself to have acquired that possessory interest from either of the original grantees.

The cause having proceeded to final hearing, a decree was entered July 2, 1880, whereby it was "ordered, adjudged and decreed that the decision or award of the register and receiver of the land described in the bill and pleadings of date the 23d of February, 1874, in favor of the defendant, William Craig, is fraudulent and void; and it is further ordered, adjudged and decreed that the patent for the said lands issued to defendant, William Craig, on the 8th day of January, 1878, be and it is hereby declared and decreed to be null and void; and that the approved plat or plats delivered to defendant, William Craig, as evidence of title to the land described in the bill, by William Campbell, Surveyor General, be and the same are hereby declared and decreed to be null and void." From that decree this appeal was prosecuted. Pending the appeal in this court, both parties having died, the cause was revived in the names of their respective personal representatives.

Mr. *Benjamin F. Butler* and Mr. *O. D. Barrett* for appellant cited: *Indianapolis Railroad* v. *Stephens,* 28 Ind. 429; *Atwater* v. *Schenck,* 9 Wis. 160; *Prieger* v. *Exchange Ins. Co.,* 6 Wis. 89; *Butterworth* v. *Hoe,* 112 U. S. 50; *United States*

v. *Schurz,* 102 U. S. 378; *Field* v. *Seabury,* 19 How. 333; *United States* v. *Throckmorton,* 98 U. S. 61, 70; *Barribeau* v. *Brant,* 17 How. 43; *Vattier* v. *Hinde,* 7 Pet. 252; *Squire* v. *Harder,* 1 Paige, 494 [*S. C.* 19 Am. Dec. 446]; *Learned* v. *Tritch,* 6 Colorado, 432; *Whiting* v. *Gould,* 2 Wis. 552; *Wright* v. *Ellison,* 1 Wall. 16; *United States* v. *Percheman,* 7 Pet. 51; *United States* v. *Patterson,* 15 How. 10; *United States* v. *Sutter,* 21 How. 170; *Castro* v. *Hendricks,* 23 How. 438; *Leitensdorfer* v. *Webb,* 20 How. 176; *Marye* v. *Parsons,* 114 U. S. 325; *Vernon* v. *Keyes,* 12 East, 632; *Johnson* v. *Towsley,* 13 Wall. 72; *Van Wyck* v. *Knevals,* 106 U. S. 360; *Moore* v. *Robbins,* 96 U. S. 530; *Lytle* v. *Arkansas,* 9 How. 314; *Cunningham* v. *Ashley,* 14 How. 377; *Barnard* v. *Ashley,* 18 How. 43; *Newhall* v. *Sanger,* 92 U. S. 761; *Vance* v. *Burbank,* 101 U. S. 514; *United States* v. *Stone,* 2 Wall. 525, 536; *United States* v. *Minor,* 114 U. S. 233; *United States* v. *Hughes,* 11 How. 552; *Hughes* v. *United States,* 4 Wall. 232; *Silver* v. *Ladd,* 7 Wall. 219; *Carroll* v. *Safford,* 3 How. 441; *Steel* v. *Smelting Co.,* 106 U. S. 447.

*Mr. Robert H. Bradford* and *Mr. Charles W. Hornor* for appellee cited: *Ober* v. *Gallagher,* 93 U. S. 199; *Ward* v. *Todd,* 103 U. S. 327; *McClung* v. *Silliman,* 6 Wheat. 598; *Bagnell* v. *Broderick,* 13 Pet. 436; *United States* v. *Stone,* 2 Wall. 525; *Johnson* v. *Towsley,* 13 Wall. 72; *Warren* v. *Van Brunt,* 19 Wall. 646; *Magwire* v. *Tyler,* 1 Black, 195; *Maguire* v. *Tyler,* 8 Wall. 650; *Snyder* v. *Sickles,* 98 U. S. 203; *Finley* v. *Williams,* 9 Cranch, 164; *McArthur* v. *Browder,* 4 Wheat. 488; *Rector* v. *Gibbon,* 111 U. S. 276; *Menard* v. *Massey,* 8 How. 293; *Commissioner* v. *Whitely,* 4 Wall. 522; *Gaines* v. *Thompson,* 7 Wall. 347; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 530; *Jones* v. *Bolles,* 9 Wall. 364; *Blodget* v. *Blodget,* 42 How. Pr. (N. Y.) 19; *Doe* v. *Doe,* 37 N. H. 268; *Sossaman* v. *Powell,* 21 Texas, 664; *Low* v. *Staples,* 2 Nevada, 209; *Holland* v. *Challen,* 110 U. S. 15; *Brenner* v. *Bigelow,* 8 Kansas, 496; *Hendricks* v. *Montague,* 17 Ch. Div. 638; *Barron* v. *Robbins,* 22 Mich. 35; *Cunningham* v. *Ashley,* 14 How. 377; *Barnard*

v. *Ashley*, 18 How. 43; *Field* v. *Seabury*, 19 How. 323; *Orton* v. *Smith*, 18 How. 263; *Steel* v. *Smelting Co.*, 106 U. S. 447; *Chapman* v. *Brewer*, 114 U. S. 158; *Livingston* v. *Woodworth*, 15. How. 546; *Yeaton* v. *Lynn*, 5 Pet. 223; *Society &c.* v. *Pawlet*, 4 Pet. 480; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386; *United States* v. *Percheman*, 7 Pet. 51; *United States* v. *Sutter*, 21 How. 170; *Morehouse* v. *Phelps*, 21 How. 294; *Landes* v. *Brant*, 10 How. 348; *Hornsby* v. *United States*, 10 Wall. 224; *Chouteau* v. *United States*, 9 Pet. 147; *Ex parte Railroad Co.*, 95 U. S. 221; *Jones* v. *Axen*, 1 Ld. Raym. 119; *Railroad Co.* v. *Smith*, 9 Wall. 95; *Jackson* v. *Clark*, 1 Pet. 628; *Ruggles* v. *Illinois*, 108 U. S. 526; *Litchfield* v. *Register*, 9 Wall. 575; *United States* v. *Ferreira*, 13 How. 40; *League* v. *De Young*, 11 How. 185; *Decatur* v. *Paulding*, 14 Pet. 497; *Polk* v. *Wendall*, 9 Cranch, 87; *Doe* v. *Winn*, 11 Wheat. 380.

*Mr. John Paul Jones*, *Mr. F. P. Dewees*, and *Mr. D. W. Voorhees*, by leave of court filed a brief on behalf of Mrs. Leann S. King, the purchaser of Leitensdorfer's interest at a sheriff's sale, citing: *Conard* v. *Nicoll*, 4 Pet. 291; *United States* v. *Arredondo*, 6 Pet. 691; *Weitzell* v. *Fry*, 4 Dall. 218; *Leitensdorfer* v. *Campbell*, 5 Dillon, 422; *Johnson* v. *Towsley*, 13 Wall. 872; *Moore* v. *Robbins*, 96 U. S. 530; *Shepley* v. *Cowan*, 91 U. S. 330; *Barnard* v. *Ashley*, 18 How. 43; *United States* v. *Ferreira*, 13 How. 40; *Zellner's Case*, 9 Wall. 244; *Atocha's Case*, 17 Wall. 439; *Butterworth* v. *Hoe*, 112 U. S. 50; *United States* v. *Percheman*, 7 Pet. 51; *United States* v. *Sutter*, 21 How. 170; *Castro* v. *Hendricks*, 23 How. 438; *Mullan* v. *United States*, 118 U. S. 271; *Doe* v. *Winn*, 11 Wheat. 380; *Polk* v. *Wendall*, 9 Cranch, 87.

Mr. JUSTICE MATTHEWS, after stating the case as above reported, delivered the opinion of the court.

By reference to the provisions of the act of the 21st of June, 1860, 12 Stat. 71, and of the act of the 25th of February, 1869, 15 Stat. 275, it will appear that after the survey of the exte-

rior lines of the Las Animas grant, the claims first to be provided for were those of all actual settlers holding possession under "titles or promises to settle" made by Vigil and St. Vrain, or their legal representatives, prior to the passage of the act. It was required that those claims, within one year from the passage of the act, should be established to the satisfaction of the register and receiver of the proper land district, when they were to be adjusted according to the subdivisional lines of survey so as to include the lands so settled upon or purchased. It follows, of course, that these were to be surveys of distinct locations, which might be widely separated from each other in different parts of the original Mexican grant, but, of course, within its exterior limits. The grant itself, however, having been confirmed only to the extent of twenty-two square leagues, it also follows that these surveys in their aggregate areas were not to exceed that quantity. If, however, there were other actual settlers within the limits of the original grant to Vigil and St. Vrain, not claiming title from or under them, but merely by reason of their actual possession, their several settlements might be established either as preëmption rights or homesteads, according to law, but the quantities were not to be deducted from the twenty-two square leagues. If any part of this quantity of twenty-two square leagues should remain unexhausted by the claims of actual settlers holding possession under "titles or promises to settle" made by Vigil and St. Vrain, and, therefore, called in this record "derivative claims," any such surplus was to be located in two equal tracts, each of square form, in any part of the tract covered by the original grant, for the benefit of Vigil and St. Vrain, and their assigns or representatives.

It is conceded by all parties to this record, that, in point of fact, the claims of the first class, including Craig's, being those of actual settlers holding possession under titles or promises to settle made by Vigil and St. Vrain, exhausted the whole quantity of the grant as confirmed and reduced to twenty-two square leagues. The controversy now is, therefore, confined to the conflicting claims of this class.

It is further to be observed that the complainant Leitens-

dorfer lays no claim to any part of the lands embraced in the survey and plat, and covered by the patent issued to Craig; he does not allege or complain that any lands belonging in equity to him were awarded to another; he admits that he was not an actual settler upon, and held no possession of, any part of that tract. On the contrary, the possession which he does allege, and the title which he asserts, have reference to another and distinct tract of land, which, as he alleges, lies within the exterior boundaries of the original Las Animas grant, but several miles distant from any part of the tract allotted and patented to Craig. He, therefore, does not claim, as a part of his case in equity, that Craig holds the legal title to any lands in trust for him. The prayer of the amended bill, so far as it asserted any right to such relief, was expressly withdrawn, and has been abandoned by counsel in argument.

The case presented, therefore, by the complainant is not one of that class, of which many instances may be found in the reports of the decisions of this court, where a defendant holding the legal title under a patent from the United States has been declared to hold that legal title merely as trustee for a complainant with a superior equity, and decreed to hold for or to convey to the true owner. The right of the complainant in this case to relief is supposed to rest upon different grounds. The injury which he alleges is, that Craig wrongfully obtained from the register and receiver an award of lands to which he had no rightful claim, whereby the whole quantity of the confirmed grant has been reduced and absorbed, so as to exclude the complainant from that share to which he was entitled. The wrong of which he complains is, that Craig fraudulently and corruptly procured the award and decision of the register and receiver in his own behalf, and against Leitensdorfer, and that the latter has been illegally cut off from his right to appeal from the decision of the register and receiver in favor of Craig and against himself, by the illegal and unauthorized issue and delivery to Craig by the Surveyor General of the approved plat of the survey of the lands awarded to him, confirmed by the subsequent issue of a formal patent, relinquishing the title of the United States to the same

tract. This is a short, but accurate, statement of the complainant's case as he presents it for examination and analysis, and for which we are to seek a rule of decision.

The fraud and corruption alleged against Craig, and which, for the purpose of the case, we are at present to assume to have been proved, as it was in fact found by the decree appealed from, do not necessarily vitiate Craig's claim of title, nor establish that of Leitensdorfer. The charge is that Craig bribed the register and receiver to make the award which they did in his favor. It may, nevertheless, be true that the award ought to so have been made upon the merits. So the register and receiver may have been right in rejecting the claim of Leitensdorfer. This possibility is tacitly admitted, for the bill does not ask a declaration and decree that Craig has no valid claim, nor a decree establishing the claim of Leitensdorfer; and it is plainly not within the jurisdiction of the Circuit Court to grant any such relief, even if it were asked.

The ascertainment of what persons came within the description of actual settlers under titles or promises to settle upon the Las Animas grant, and the proper limits of their actual settlement and possession, and the adjustment thereof by suitable surveys, were entrusted by the acts of Congress on that subject in the first instance to the determination of the register and receiver of the proper land district, and in case by law an appeal lies from their decision, then to those superior officers in the Land Office and the Department of the Interior, to whom such an appeal might be taken. The adjustment of these claims and their definition by the prescribed surveys and plats, establishing them in their appropriate locations within the limits of the original grant, and all questions of possession, of boundary, and of conflict, constitute a part of the administration of the law confided to that branch of the Executive Department. The free course of that administration within the limits of the law cannot be interrupted or interfered with by the judicial power. Undoubtedly, private rights of great value and importance may be involved, and the exercise of executive discretion may require decisions in favor of some and against others in a conflict of interests and

claims.   But, as all these claims and titles and interests arise
under the law which refers their settlement to executive offi-
cers, that reference is itself a condition and qualification of
the right, and the latter is altogether subject to its conse-
quences.   When the Department has exercised its discretion
and exhausted its function, the legal and equitable effect of
what it has done or failed to do may be drawn in question,
when necessary to the determination of conflicting rights be-
tween private parties, in a judicial proceeding; but as long
as the alleged rights, which are the subject of contention, are
in the course of adjudication by the special tribunal, to which
they are referred for settlement, the function of that tribunal
cannot be displaced by courts of justice.   And what the com-
plainant in this case really asks for as his ultimate relief is,
that the way may be cleared for him to the exercise of the
right of appeal, which he claims, from the adverse decision of
the register and receiver, to the Commissioner of the General
Land Office, by the removal of those obstructions which he
alleges have been illegally interposed against him by the issue
of the-approved survey and plat by the Surveyor General of
Colorado upon the order of the President, in disregard and
denial of his right of appeal, and the subsequent issue of the
patent, in consequence of which the Commissioner of the Gen-
eral Land Office and the Secretary of the Interior have decided
that they are precluded from now entertaining the complain-
ant's appeal.   It is supposed that these obstructions are removed
by the decree of the Circuit Court, which adjudges that the
decision and award of the register and receiver in favor of
Craig is fraudulent and void, and annuls and declares void the
approved plat delivered to Craig by the Surveyor General of
Colorado, and the patent issued to him for the same lands.
The decree seeks to destroy the foundation and muniments of
Craig's title to the particular lands described in the plat and
patent, but it does not award those lands to any one else, and
it does not assume to establish the title of Leitensdorfer to
those which he claims.   What is the effect of this decree?
In any action brought by a stranger to this record against
Craig for the recovery of the lands covered by his patent, this

decree could not operate as evidence against him; it can only be effective by way of estoppel, and a stranger to the record cannot avail himself of an estoppel by which he is not himself bound. Nor can the decree be supposed to operate upon the record of the survey and plat and of the decision of the register and receiver as they remain recorded in the Land Department, so as to render them null and void as if they had never existed, and bind and oblige the officers of the Department of the Interior to proceed in the administration of the law with reference to these lands as if nothing of that sort had taken place. The decree operates only *in personam* and *inter partes.* The courts could have no control of the public records of the Land Department, nor supervision over the conduct of its officers, otherwise than as it can be exercised in appropriate cases by the writ of mandamus; besides which, to annul the decision of the register and receiver, if that were possible, would be to destroy the foundation of the complainant's appeal and restore the matter to the condition in which it was when all the claims were pending before the register and receiver. This result is not within the scope of the complainant's bill.

If, on the other hand, the operation of the decree is limited so as to cancel and annul the approved plat delivered by the Surveyor General, and the patent issued thereupon, leaving the decision of the register and receiver to stand as the subject of an appeal to the Commissioner of the General Land Office, supposed to be still pending, the case of the complainant for equitable interference does not seem to be bettered. For, in that event, what power has the Circuit Court, sitting in Colorado as a court of equity, to enforce and make effective the complainant's supposed right of appeal? The decree does not operate upon the officers whose action is invoked as necessary to secure the complainant's alleged rights. The process of a court of equity is not appropriate to the exigency, and the Circuit Court of the United States in Colorado has no jurisdiction, either at law or in equity, over the officers of the Land Department to compel them to entertain the appeal. Neither is there reason to suppose that the Land Department

will on the basis of such a decree, *sua sponte*, proceed with the appeal as pending, or take such action on the application of the complainant.

The ground on which Mr. Schurz, as Secretary of the Interior, upon the advice of the Attorney General, Mr. Devens, declined to reopen and rehear the case was that the matter had been finally acted upon by his predecessor in office. 15 Opinions Attorneys General, 208. That fact remains, notwithstanding a decree in this case declaring the survey and plat and patent to Craig to be illegal and invalid. Such a declaration and decree operate only in the case and between the parties to this record. It does not operate, as has been already stated, upon the public records of the Land Department in which they are recorded, nor does it bind and oblige the executive officers of the government in control of that department. Such a decree, therefore, would grant to the complainant no practical relief; it would be vain and nugatory.

The ground which it is claimed in argument justifies such a decree is, that, pending Leitensdorfer's appeal to the Commissioner of the General Land Office, the delivery by the Surveyor General of the approved survey and plat, under the order of the President, was illegal and void, and that by reason thereof the subsequent issue of the patent could not operate as a confirmation or conveyance of the title. But if the order of the President, interrupting the course of the appeal in the Land Department, and the action of the officers of that department in compliance with it, were illegal and therefore void, they were and are of no force and efficacy, either at law or in equity, and are not binding on any succeeding incumbents of the offices of Commissioner of the General Land Office or Secretary of the Interior. It follows that the case of the complainant, based upon his right to prosecute his appeal, is as complete without such a decree as with it. If the duty of the Commissioner of the General Land Office to entertain and determine that appeal exists as contended, it is a legal duty. That duty is to take up, consider, and adjudge the rights of the parties in interest, and the entertaining of the appeal is a purely ministerial act, although the questions

to be considered in the course of that appeal are to be, resolved by the exercise of official discretion and judgment. Nevertheless, it is quite clear, as it has been oftentimes decided, that the duty of entering upon their consideration and proceeding to their determination, is strictly ministerial. The remedy in such cases is at law, by means of a writ of mandamus, and not in equity. *Ex parte Parker*, 120 U. S. 737; *Ex parte Brown*, 116 U. S. 401. If, to such a writ, issued by a competent court, the officer should make return that he was precluded from entertaining the appeal by reason of the prior action of a predecessor in office, under the order of the President, the question of the sufficiency of that return would be presented to the court issuing the writ, and would involve necessarily the adjudication of the questions mooted in this case. If such a return should, in such a tribunal, be adjudged to be sufficient, then the complainant would be without remedy, for the right which he claims, if it exists, is a legal right cognizable in courts of law, and not a right resting upon any equity within the jurisdiction of chancery courts. If, on the other hand, such a return in such a proceeding should be adjudged to be insufficient, then the complainant would have the remedy which he is here seeking, by a direct and effective process binding upon the parties whose conduct he is seeking to control. In either alternative, therefore, it is equally conclusive that the complainant cannot obtain, in this cause, the relief which he seeks, and which alone is adequate to the redress of the wrong of which he complains.

This conclusion is not disturbed or affected by the assumption that the decision and award of the register and receiver was obtained by corrupt and fraudulent practices for which Craig is responsible. The right of appeal from that decision to the Commissioner of the General Land Office, if it exists in any case, is not hindered by the fraudulent character of the decision appealed from, and the appeal itself is the mode pointed out by law for the correction of any error that may be shown in the decision complained of, whether that error has been produced by the practice of fraud and corruption, or was merely an honest mistake. The proof of such fraud

and corruption does not, as has been already stated, demonstrate error. The decision may be right, notwithstanding the fraud, and on the appeal Craig's title, as it now stands upon the approved survey and plat and the patent, may be adjudged to be valid, and any error in it we must assume will be corrected, whether fraudulent or innocent. The question of fraud, therefore, alleged against Craig and the register and receiver, in view of the relief asked, is immaterial.

There is an alternative in which it might be supposed that the question of fraud in procuring the decision of the register and receiver, and thereby obtaining the muniments of title on which Craig's claim now rests, might become material for determination in a judicial cause. That alternative is the supposition, contrary to that on which the complainant rests his case, that the decision of the register and receiver, the issue of the approved survey and plat, and of the patent based thereon, are final and conclusive upon the Department of the Interior, and not subject to the appeal taken to the Commissioner of the General Land Office. It may be asked whether such a determination of inferior officers of the Land Department, involving private rights and interests of great magnitude and value, infected with fraud, is to be protected from attack by judicial process. We are told that "equity has always had jurisdiction of fraud, misrepresentation, and concealment, and it does not depend upon discovery." *Jones* v. *Bolles*, 9 Wall. 364, 369. That equity will interfere by a proper proceeding where the executive power has exhausted itself. *Commissioner* v. *Whiteley*, 4 Wall. 522; *Gaines* v. *Thompson*, 7 Wall. 347; *Litchfield* v. *Register and Receiver*, 9 Wall. 575; *Samson* v. *Smiley*, 13 Wall. 91; *Johnson* v. *Towsley*, 13 Wall. 72; *Warren* v. *Van Brunt*, 19 Wall. 646. That "the officers of the Land Department are specially designated by law to receive, consider, and pass upon proofs presented with respect to settlements upon the public lands with a view to secure rights of preëmption. If they err in the construction of the law applicable to any case, or if fraud is practised upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a

controversy arises between private parties founded upon their decisions." *Shepley* v. *Cowan*, 91 U. S. 330, 340 ; *Moore* v. *Robbins*, 96 U. S. 530.    This doctrine is undoubtedly true, but its limitation is found in the statement that such rulings "may be reviewed and annulled by the courts when a controversy arises between parties founded upon their decisions."    The jurisdiction to determine such questions does not arise in the courts of the United States by virtue of any power of supervision given to them whereby they have a right to control, to correct, to reverse, and to dictate the procedure and action of executive officers within the scope of the duties confided to them by law.    No such power of revision is given, and none such can be exercised.    Such a function is not judicial ; it is administrative, executive, and political in its nature.    The abstract right to interfere in such cases has been uniformly denied by judicial tribunals, as breaking down the distinction so important and well defined in our system between the several, separate, and independent branches of the government ; and where the character of the interference sought falls within that designation, the application for it has been uniformly denied.

The case is different in a litigation between parties involving a contest of conflicting claims, where under some known head of jurisdiction definite relief or redress may be conclusively administered in favor of one and against the other party.    In such cases, the right at law or in equity belongs to one or the other of the contestants ; to which of the two it should be awarded is the judicial question involved.    The solution of that question may depend upon the effect to be given, either at law or in equity, to some action or determination of the executive officers charged in the first instance with duties of administration in connection with the subject of the litigation, such as, for example, the officers of the Land Department in the administration of the system of law in reference to the public domain of the United States.    It is in such cases that the question has most frequently arisen.    In those cases it has, indeed, been held, as claimed, that if the executive officer has made a mistake of law in his administration ; if he has exer-

cised power without authority of law; if his determination has been procured by the fraudulent practices of one party upon the officer or upon the opposite party; or if the officer has himself fraudulently decided in favor of one and against the other, a court of justice will give effect to the rights of the parties as between themselves, notwithstanding the errors and the frauds alleged and shown. The principle is that "the decision of the officers of the Land Department, made within the scope of their authority on questions of this kind, is in general conclusive everywhere, except when reconsidered by way of appeal within that department; and that as to the facts on which their decision is based, in the absence of fraud or mistake, that decision is conclusive even in courts of justice when the title afterwards comes in question. But that in this class of cases, as in all others, there exists in the courts of equity the jurisdiction to correct mistakes, to relieve against frauds and impositions, and, in cases where it is clear that those officers have by a mistake of the law given to one man the land which on the undisputed facts belonged to another, to give appropriate relief." *Moore* v. *Robbins*, 96 U. S. 530, 535; *Shepley* v. *Cowan*, 91 U. S. 330; *Johnson* v. *Towsley*, 13 Wall. 72; *Marquez* v. *Frisbie*, 101 U. S. 473; *Vance* v. *Burbank*, 101 U. S. 514; *Quinby* v. *Conlan*, 104 U. S. 420, 425; *White* v. *Cannon*, 6 Wall. 443; *Silver* v. *Ladd*, 7 Wall. 219, 228.

In *Smelting Co.* v. *Kemp*, 104 U. S. 636, 647, it was said: "If in issuing a patent its officers took mistaken views of the law, or drew erroneous conclusions from the evidence, or acted from imperfect views of their duty, or even from corrupt motives, a court of law can afford no remedy to a party alleging that he is thereby aggrieved. He must resort to a court of equity for relief, and even there his complaint cannot be heard unless he connect himself with the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent; and he must possess such equities as will control the legal title in the patentee's hands."

And in *Silver* v. *Ladd*, 7 Wall. 219, 228, the doctrine was

stated in these terms: "The relief given in this class of cases does not proceed upon the ground of annulling or setting aside the patent wrongfully issued. That would leave the title in the United States, and the plaintiff might be as far from obtaining justice as before. And it may be well doubted whether the patent can be set aside without the United States being a party to the suit. The relief granted is founded on the theory that the title which has passed from the United States to the defendant enured in equity to the benefit of the plaintiff; and a court of chancery gives effect to this equity, according to its forms, in several ways."

But if the court, by reason of other circumstances, is powerless to adjust and adjudge with final and conclusive effect the opposing claims of the litigating parties, so as to award to one what has been wrongfully given to another, then the mere circumstance that the official act of the executive authority is challenged for error of law or for fraud does not and cannot constitute the ground of an independent jurisdiction. It is only as necessarily incident to the proper decision of a case at law or in equity between parties regularly in court for a determination of their rights, as between themselves, that such questions can be discussed or decided. Where the whole force of the judgment is spent upon a mere declaration that the act in question is void for want of authority, or voidable by reason of being infected with fraud, and it cannot consistently with known principles of law or equity go further by changing the relations between the parties to the suit towards each other, or towards the subject-matter of the litigation, the case is not judicial. This is precisely the present case. Here a declaration by a decree that the decision of the register and receiver was fraudulent, and therefore voidable; that the action of the President in ordering the issue of the approved survey and plat by the Surveyor General of Colorado, and its delivery in pursuance thereof, and the subsequent issue of the patent to Craig, were without warrant of law, and therefore void absolutely, does not decide the controversy raised by Leitensdorfer, nor settle and adjudge the rights of any of the parties thereto. Nor does it, as we have already shown, remove any obstacles

which have been wrongfully and unjustly interposed by the defendant to the prosecution in another forum of the rights which the complainant seeks to recover. It is entirely inefficacious for any such result, because, as already intimated, if the acts complained of are, as complainant contends, void as being without authority of law, then they can have no legal effect whatever, and cannot be set up by the officers of the Department of the Interior, as reasons for refusing to entertain and determine the appeals of Leitensdorfer from the decision of the register and receiver to the Commissioner of the General Land Office. If, in point of fact, such a right of appeal is secured to him by the law, and the officer whose duty it is to hear and determine it refuses without just reason so to do, the proper remedy is by a writ of mandamus, and not by a bill in equity.

But it is shown in this record that Leitensdorfer, in pursuance of an interlocutory order of the Circuit Court, and as a condition on which the original injunction was granted, in June, 1877, made his application to the Supreme Court of the District of Columbia for a mandamus against the Commissioner of the General Land Office, to require him to proceed with the hearing of the appeals alleged to be pending before him, and that his application was denied by that court; and he alleges that he did not appeal from that judgment, because he was advised by counsel that no appeal would lie from such a judgment; but this is not sufficient to confer jurisdiction upon a court of equity. We are not called upon in this cause to decide whether the judgment of the Supreme Court of the District of Columbia at special term is or is not erroneous, nor whether an appeal would lie from it, nor whether by law Leitensdorfer is entitled to be heard before the Commissioner of the General Land Office upon his appeal from the decision of the register and receiver. What we do say, and all we say, is that if he is entitled to such an appeal his remedy is not by a bill in equity.

*For these reasons the decree of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the bill; and it is so ordered.*