## SIOUX CITY & ST, P. R. Co. *v.* UNITED STATES.

*(Circuit Court, N. D. Iowa.* November 23, 1888.)

COURTS — FEDERAL COURTS — SUITS AGAINST UNITED STATES — PUBLIC LANDS — OFFICERS — INJUNCTION ACT OF MARCH 3, 1887.

Act Cong. March 3, 1887, which confers upon the court of claims jurisdiction to hear and determine all claims founded on the constitution of the United States, or any law of congress. or on any regulation of an executive department, or on any contract, express or implied, with the government of the United States, and gives the United States circuit courts concurrent jurisdiction with the court of claims, simply removes the exemption of the United States from suit in those cases, and does not confer upon the circuit court jurisdiction to restrain the public land department officials from allowing land to be entered as a portion of the public domain, which is claimed by a railroad company to have been earned under its grant.

In Equity. On demurrer to bill.

Bill by the Sioux City & St. Paul Railroad Company against the United States to have complainant declared the owner of certain lands, and to have the officers of the United States enjoined from disposing of the same, or allowing entries to be made of the same under the homestead, timber culture, or pre-emption laws.

*J. H. & C. M. Swan,* for complainant.

*S. P. Murphy,* U. S. Dist. Atty., for the United States.

SHIRAS, J. Complainant in its bill herein filed avers that by the terms of the act of congress of May 12, 1864, there was granted to the state of Iowa, for the purpose of aiding in the construction of a line of railway from Sioux City to the Minnesota state line, every alternate section of land designated by odd numbers for 10 sections in width on each side of the proposed line of railway; that the state of Iowa in 1866 accepted said grant, and by an act of the legislature conveyed the lands to the complainant company, and that the complainant, by the construction of a line of railway from the Minnesota line to Le Mars, Iowa, and by the building of a short line in Sioux City, earned and became entitled to 320,000 acres of land; that a large part thereof was duly selected and patented to the state of Iowa by the secretary of the interior, but that the state of Iowa refused to convey the legal title of said lands to complainant, and on or about March 24, 1884, wrongfully relinquished and conveyed said lands to the United States; that the officers of the United States, to-wit, the secretary of the interior, commissioner of the general land-office, and the officers of the local land-office at Des Moines have wrongfully declared the said lands to be a part and parcel of the public domain, and as such to be open and subject to settlement and entry under the homestead, timber culture, and pre-emption laws of the United States. The bill further avers that certain named individuals have been permitted to make application for the purchase of certain named parts of sections, amounting in all to 720 acres, which it is averred in fact belong to the complainant as part of the lands by it earned under the grant

of 1864; and that, unless restrained from so doing, the officers of the land department will issue patents therefor to the named parties, thereby casting a cloud upon complainant's title. The prayer is that "judgment and decree be rendered declaring your complainant to be the owner of the said lands, and forbidding and enjoining the officers of the United States from selling or disposing of the same, or allowing any entries to be made of the same under said homestead, timber culture, or pre-emption laws." It is averred in the bill that jurisdiction to entertain the bill is conferred upon the court by the provisions of the act of congress of March 3, 1887. The demurrer presents the question whether such jurisdiction exists. In support thereof it is urged that the act of congress of May 12, 1864, granted the lands for the express purpose of aiding in the construction of the named line of railway, and that the company, relying upon such grant, undertook the construction of the road, and that in effect thereby there was created a contract between the United States and the company entitling the company to said lands upon the building of the line of railway as contemplated in said granting act; that the company's claim is based, not only upon the law of congress of May 12, 1864, but also upon the contract which was created between the company and the United States when the former undertook the building of the line of railway pursuant to the terms of said act of May 12, 1864; and that therefore the cause of action is clearly within the provisions of the act of March 3, 1887. That act provides "that the court of claims shall have jurisdiction to hear and determine the following matters: *First.* All claims founded upon the constitution of the United States or any law of congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable," etc. It is also provided that the circuit courts of the United States shall have concurrent jurisdiction with the court of claims in all cases where the amount of the claim exceeds one thousand and does not exceed ten thousand dollars.

There can be no doubt that, granting the several allegations in the bill to be true, the complainant has a claim to the lands described in the act of May 12, 1864, and that such claim may be said to be founded, not only upon the act of congress, but also upon the contract which the law would imply in favor of the company, if it be true that, relying upon the grant of lands therein made, the company has built the road in compliance with the terms of the act; but it does not follow that this court has jurisdiction of every possible claim that may arise upon an act of congress or a contract with the government. The act itself expressly restricts the meaning of the words "all claims" by the provision "in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable." The effect of the act is to provide that if a party has a

claim of the classes named in the act which he would otherwise have a right to prosecute in a court of law, equity, or admiralty, he shall not be debarred from so doing by reason of the fact that the United States is the adversary party. If, however, aside from the fact that the adversary party is the United States, there exists any reason or rule of law why a court has not jurisdiction of the claim or of the relief sought, then the act of March 3, 1887, does not confer it. Two views may be taken of the true scope of the bill filed in the present cause, and of the claim sought to be established thereby. One is that the purport thereof is to settle, as against the United States, the right of the complainant to the land, which it is averred the state of Iowa wrongfully reconveyed to the United States, and which complainant avers had been earned by it under the terms of the original grant. Assuming this to be the real purpose of the bill, then the subject of the controversy includes many thousands of acres of land, the value of which largely exceeds the limit of $10,000, which the act of congress itself imposes upon the jurisdiction of this court; and for that reason, if for none other, the court would be without jurisdiction. If it be held, however, that the real matter in controversy is only the 720 acres of land specifically described in the bill, and which it is averred the officers of the land-office have permitted to be entered by the individuals named, then the value thereof, being below $10,000, would not defeat the jurisdiction, if it otherwise exists. What, then, are the facts touching this 720 acres of land, which complainant shows by the averments of the bill as the grounds for relief sought? In substance it is averred that complainant earned these lands by constructing the line of railway described in the act of May 12, 1864; that the title thereto should have been perfected in complainant by the issuing of patents therefor by the state of Iowa, to whom the same had been conveyed in trust by the United States; that, in disregard of complainant's rights, the state of Iowa had reconveyed the lands to the United States, that the officials of the land department had declared said lands to be open to entry as part of the public domain of the United States, and had permitted the entry thereof by the parties named, who were completing the evidences of entry and occupation; and that, unless restrained, the officers of the land department would issue to the occupants patents for said lands. If these lands form part of the public doman, and are therefore open to entry, then the individuals named in the bill have the right to perfect their proofs of title, and procure the proper evidences thereof. The determination of this question calls for the exercise of judicial judgment and discretion on part of the officers of the land department. It is a well and long settled principle that the courts cannot control the officers of the department in the exercise of duties which are judicial or discretionary in their nature. *Gaines* v. *Thompson*, 7 Wall. 347; *Secretary* v. *McGarrahan*, 9 Wall. 298; *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330; *Moore* v. *Robbins*, 96 U. S. 530; *Craig* v. *Leitensdorfer*, 123 U. S. 189, 8 Sup. Ct. Rep. 85.

In *Litchfield* v. *Register*, 9 Wall. 575, it was sought to restrain the officers of the land-office at Fort Dodge, Iowa, from acting upon applications

made to prove up pre-emption on certain lands which it was averred had become the property of complainant through certain acts of congress and of the legislature of Iowa.    The supreme court held " that the judiciary cannot interfere, either by *mandamus* or injunction, with executive offi-cers, such as respondents here, in the discharge of their official duties un-less those duties are of a character purely ministerial, and involving no exercise of judgment or discretion."    The decision is placed upon the ground that the duty of deciding primarily whether given lands are or are not open to entry as part of the public domain is conferred upon the land department; that the duty is not ministerial, but is judicial, in its nature, and that the courts cannot interfere with the exercise thereof by the department.    Before the passage, therefore, of the act of March 3, 1887, it is clear that this court did not possess the right to interfere with the land department in the discharge of the duty imposed upon it, to-wit: of deciding whether any given sections of land were open to entry, or whether the same had been reserved from public sale or had been granted away, and had thereby ceased to be part of the public domain. The cases cited point out clearly the remedy to be pursued by one who claimed that his rights had been denied or ignored.

Does the act of March 3, 1887, change the relations of the judicial and departmental branches of the government in this particular, and con-fer upon the courts increased jurisdiction in matters of this character? So radical a change in the relations of these branches of the government cannot be supposed to have been intended by congress, unless it is declared in unmistakable language; and such declaration cannot be found in the act in question.    Not only so, but the restriction found in the declara-tion that the claims meant by the act are such claims as the party would be entitled to redress either in a court of law, equity, or admiralty, if the United States were suable, shows that the only purpose of the act was to remove the bar of the non-suability of the United States, and not to confer jurisdiction upon the courts to interfere with the action of the department in matters confided to it by the then existing laws.    So long, therefore, as the land department has control of the question whether these lands are or are not portions of the public domain open to entry, and is dealing with that question, its action is beyond the control of this court, and the court cannot, as is asked in the bill filed herein, enjoin the officers of that department from deciding that question primarily, nor from executing the usual evidences of title if the decision is in favor of those claiming the land under the homestead, pre-emption, or timber culture laws.    As the averments of the bill show that the land depart-ment is in the exercise of its undoubted jurisdiction in entertaining, con-sidering, and deciding upon the claims of the parties named to hold said lands under the homestead laws of the United States, it follows that this court has not the jurisdiction to control or interfere with the action of the department in the premises.    The facts averred in the bill touching the 720 acres of land specifically described do not present the question whether the court has the jurisdiction to hear and determine whether the complainant or the United States is the owner in fact of a given sec-

tion or sections of land.   If the bill averred that the complainant had, by building the line of railway in accordance with the terms of the act of congress, earned certain lands, and that the United States refused to convey the legal title thereof to complainant, then it might be that jurisdiction to hear and determine that question might exist, provided the value of the lands did not exceed the limit fixed by the act itself, and provided further that the land department had not the question before it for consideration and determination.   In other words, if the sole parties in interest were the complainant and the United States, the court might have jurisdiction to hear and determine the question whether the complainant had earned certain lands, and was therefore equitably entitled to demand a conveyance of the legal title from the United States. However this may be, and not deciding it, it still remains clear that when third parties assert rights to the lands under the homestead laws, and are proceeding according to law to submit their claims to the determination of the land department, then the primary jurisdiction to hear and determine the questions involved is with the department, and the court cannot interfere therewith.   If the department holds that the lands are open to settlement, and evidences of title are executed to the applicants, then by suit against the latter the legal questions involved may be brought for adjudication before the courts; but so long as the matter is pending before the department the jurisdiction of the court is, to say the least, in abeyance, and cannot be invoked.   The demurrer to the bill is therefore sustained.