## SHERMAN *v.* BUICK.

1. Testimony, whether parol or documentary, which shows a want of power in officers who issue a patent, is admissible in an action at law to defeat a title set up under it. In such case, the patent is not merely voidable, but absolutely void; and the party is not obliged to resort to a court of equity to have it so declared.

2. In construing the act of March 3, 1853 (10 Stat. 246), the court held: 1. School sections sixteen and thirty-six, granted to the State of California by sect. 6 of the act, are also excepted from the operation of the pre-emption law to which, by the same section, the public lands generally are subjected. 2. The rule governing the right of pre-emption on school sections is provided by the seventh section of the act; and it protects a settlement, if the surveys, when made, ascertain its location to be on a school section. 3. In such case, the only right conferred on the State is to select other land in lieu of that so occupied. 4. The proviso to the sixth section, forbidding pre-emption on unsurveyed lands after one year from the passage of the act, is limited to the lands not excepted out of that section, and has no application to the school sections so excepted.

ERROR to the Supreme Court of the State of California.

The plaintiff in error brought suit in the proper court of the State of California to recover possession of a part of section 36, township 5 south, range 1 east, Mount Diablo meridian, and asserted title thereto under a patent from the United States, bearing date May 15, 1869. The defendant claimed under a patent from the State of California, of the date of Jan. 1, 1869. The title of the State is supposed to rest on the act of Congress of March 3, 1853 (10 Stat. 246), granting to her, for school purposes, with certain limitations, every sixteenth and thirty-sixth section within her boundaries, according to the surveys to be thereafter made of the public lands.

The plaintiff, in aid of his patent, and to defeat the title of the State under the act of 1853, offered to prove, that, as early as Dec. 20, 1862, he had settled upon the land, and had ever since resided on it; that it was not surveyed until Aug. 11, 1866; that he had filed and proved his pre-emption claim to it Nov. 6, 1866; and paid for it, and received a patent certificate, on which his patent was duly issued.

The court excluded this evidence, and gave judgment for the defendant, which was affirmed by the Supreme Court; whereupon the plaintiff sued out this writ of error. The sections of

the act which bear upon the case are set forth in the opinion of the court.

*Mr. Philip Philips, Mr. S. M. Wilson,* and *Mr. George A. Nourse,* for the plaintiff in error.

1. It was competent for the plaintiff to show that the State, at the date of her patent to the defendant, had no title to the lands in controversy. *Polk's Lessee* v. *Wendell,* 9 Cranch, 87; *Patterson* v. *Winn,* 11 Wheat. 381; *Patterson* v. *Tatum,* Pacific Law Reporter, Oct. 6, 1874; *Doll* v. *Meader,* 16 Cal. 295; *Terry* v. *Megerle,* 24 id. 609; *Reichart* v. *Felps,* 6 Wall. 160; *Norton* v. *Nebraska,* 21 id. 660.

2. The legal title to sections sixteen and thirty-six did not vest in the State until they were marked out and defined by survey. Until then the grant to her was in the nature of a float. *Middleton* v. *Lowe,* 30 Cal. 596; *Railroad* v. *Fremont County,* 9 Wall. 94; *Gaines* v. *Nicholson,* 9 How. 356; *Cooper* v. *Roberts,* 18 id. 173. The settlement of the plaintiff, having been made before such survey, was within the exception contained in the seventh section of the act of 1853. The grant, therefore, did not embrace the lands covered by that settlement, and the patent of the State was an absolute nullity.

3. The intention of Congress to protect pre-emption settlements made on school sections before such survey is clearly manifested by the provision authorizing the State to select other lands in lieu of those on which such settlements were made.

*Mr. Montgomery Blair* for the defendant in error.

1. The grant of sections sixteen and thirty-six was *in præsenti.* No settlement on the lands in controversy having been made by the plaintiff at the date of the act, or within one year thereafter, they were not excepted from the grant. *Houghton* v. *Higgins,* 25 Cal. 255; *Doll* v. *Meader,* 16 id. 296; *Van Volkenburg* v. *McCleud,* 21 id. 330; *Summers* v. *Dickinson,* 9 id. 554; *Owen* v. *Jackson,* id. 322; *Keeran* v. *Griffith,* 27 id. 87; *Robinson* v. *Forest,* 29 id. 317; *Bludworth* v. *Lake,* 23 id. 255; *Mezerle* v. *Ashe,* 27 id. 328; 33 id. 74; *Rutherford* v. *Greene,* 2 Wheat. 196.

2. Although a survey was required to identify these sections by specific boundaries, a vested interest passed to the State by

force of the act of 1853. The doctrine of relation has been uniformly applied when executive acts, whether by survey or patent, are required to give full effect to a grant. The title, whenever they are completed, inures as of the date of the inception of the grant, and defeats all intervening claims. *Landis* v. *Brant*, 10 How. 373; *Kissell* v. *The Public Schools*, 18 id. 19; *Cooper* v. *Roberts*, id. 173; *Chouteau* v. *Gibson*, 13 Wall. 92; *Maguire* v. *Tyler*, 8 id. 650; *Railroad Company* v. *Smith*, 9 id. 95; *Veeder* v. *Guppy*, 3 Wis. 502.

It is said, on the other side, that the grant does not attach to the school sections till they are surveyed, because till then there were no such sections. This proves too much. If the thing granted did not exist, or was not described with certainty, the grant would be void, which is not the argument. The thing granted is the *land*, which did exist. " Section " is only a word of description, but it is a certain and enduring description; and a grant of a particular section is equally operative to appropriate it, whether its lines have been already run, or are hereafter to be run in the same manner, making the location only a question of measurement and calculation. Hence the description is as complete in the one case as in the other, and is so treated by the law ; for the grant applies in terms to the " surveyed and to the unsurveyed land." As much violence is done to the language by withholding the " *unsurveyed* " lands from the schools as by denying them to pre-emptors.

3. Subsequent acts extending the permission to settle upon unsurveyed lands have no bearing upon this case. They cannot operate to recall the grant of 1853, or impair the rights which the State acquired under it. The government cannot resume its grants. *New Orleans* v. *De Armas*, 9 Pet. 224.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The contest in this case is between a patent of the United States and a patent of the State of California. To determine which of them conveyed, under the facts offered in evidence, the title to the land in controversy, a construction of the act of 1853 is required. It is entitled " An Act to provide for the survey of the public lands in California, the granting of pre-

emption rights therein, and for other purposes," and is the first act of Congress which extended the land system of the United States over the newly acquired territory of that State. It provided for surveys, for sales, for the protection of the rights of settlers, miners, and others; and, among the other purposes mentioned in the caption, for magnificent donations to the State of lands for schools and for public buildings.

The sixth and seventh sections of the act are of chief importance in the matter under consideration; the preceding sections having provided for surveying all the lands. The clause of the sixth section, in which the grant to the State of the sixteenth and thirty-sixth sections for school purposes is found, reads as follows : —

" All the public lands in the State of California, whether surveyed or unsurveyed, with the exception of sections sixteen and thirty-six, which shall be, and hereby are, granted to the State for the purposes of public schools in each township; and, with the exception of lands appropriated under this act, or reserved by competent authority, and excepting, also, the lands claimed under any foreign grant or title, and the mineral lands, shall be subject to the preemption laws of the 4th of September, 1841, with all the exceptions, conditions, and limitations therein, except as is herein otherwise provided; and shall, after the plats thereof are returned to the office of the register, be offered for sale, after six months' public notice in the State of the time and place of sale, under the laws, rules, and regulations now governing such sales, or such as may be hereafter prescribed."

Then come several provisos, which we will consider hereafter ; but we pause here to note the effect of this granting and excepting clause on the lands which should, by the future surveys of the government, be found to be sections sixteen and thirty-six.

It is obviously the main purpose of the section to declare, that after the lands are surveyed they shall be subject to sale, according to the general land system of the government; and, secondly, to subject them to the right of pre-emption as defined by the act of 1841, and to extend that right to lands unsurveyed as well as to those surveyed. But here it seemed to occur to the framer of the act, that California, like other States in which

public lands lay, ought to have the sixteenth and thirty-sixth sections of each township for school purposes, and that they should not be liable to the *general pre-emption* law, as other public lands of the government would be. He accordingly injected into the sentence the grant of these lands to the State, and the exception of them from the operation of the pre-emption law of 1841, together with other lands which in like manner were neither to be sold nor made subject to pre-emption. These were, lands appropriated under the authority of that act, or reserved by competent authority; lands claimed under any foreign grant or title (*i.e.*, Mexican grants); and mineral lands. All these were by this clause exempted from sale and from the general operation of the pre-emption laws.

But the experience of the operation of our land system in other States suggested that it might be ten or twenty, and in some instances thirty, years before all the surveys would be completed and the precise location of each school section known. In the mean time, the State was rapidly filling up by actual settlers, whose necessities required improvements, which, when found to be located on a school section, should have some protection. What it should be, and how the relative rights of the settler and of the State should be also protected under these circumstances, is the subject of a distinct section of the act, — the one succeeding that we have just considered.

That section (7) provides: "That when any settlement, by the erection of a dwelling-house, or the cultivation of any portion of the land, shall be made upon the sixteenth and thirty-sixth sections *before the same shall be surveyed*, or when such sections may be reserved for public uses, or taken by private claims, other land shall be selected by the proper authorities of the State in lieu thereof." That it was the purpose of this section to provide a rule for the exercise of the right of pre-emption to the school lands granted by the previous section cannot be doubted. The reason for this is equally clear; namely, that these lands were not only granted away by the preceding section and inchoate rights conferred on the State, but they were, with other classes of lands, by express terms excepted out of the operation of the pre-emption laws which

it was a principal object of that section to extend to the public lands of California generally.

Whether a settler on these school lands must have all the qualifications required by the act of 1841, as being the head of a family, a citizen of the United States, &c., or whether the settlement, occupation, and cultivation must be precisely the same as required by that act, we need not stop to inquire. It is very plain, that, by the seventh section, so far as related to the date of the settlement, it was sufficient if it was found to exist at the time the surveys were made which determined its locality; and, as to its nature, that it was sufficient if it was by the erection of a dwelling-house, or by the cultivation of any portion of the land. These things being found to exist when the survey ascertained their location on a school section, the claim of the State to that particular piece of land was at an end; and, being shown in the proper mode to the proper officer of the United States, the right of the State to that land was gone, and in lieu of it she had acquired the right to select other land agreeably to the act of 1826, subject to the approval of the Secretary of the Interior.

But it is said that the right of pre-emption thus granted by the seventh section was subject to the limitation prescribed by the third proviso to the sixth section; namely, " that nothing in this act shall be construed to authorize any settlement to be made on any public lands not surveyed, unless the same be made within one year from the passage of this act; nor shall any right of such settler be recognized by virtue of any settlement or improvement made of such unsurveyed lands subsequent to that day." And such was the opinion of the Supreme Court of California. And that court, assuming this to be true, further held, that the grant made by the act of the school sections was a present grant, vesting the title in the State to the sixteenth and thirty-sixth sections absolutely, as fast as the townships were surveyed and sectionized. *Higgins* v. *Houghton*, 25 Cal. 252. As a deduction from these premises, it held, that the right to pre-emption on these lands expired with the lapse of the year from the passage of the act, and that no subsequent act of Congress could revive or extend it, even if it was so intended.

But we are of opinion that the first of this series of proposi-tions is untenable.

The terms of the proviso to the sixth section, and those of the seventh section, if to be applied to the same class of lands, are in conflict with each other. The one says, that if settle-ment be made on land *before the survey*, which by that survey is found to be on the sixteenth or thirty-sixth section, the set-tlement shall be protected. The other says, that no settlement shall be protected unless made within one year after the pas-sage of the act. In view of the well-known fact that none of these surveys would be completed under several years, the pro-vision of the seventh section was a useless and barren conces-sion to the settler, if to be exercised within a year, and, in the history of land-titles in that State, would have amounted to nothing. This apparent conflict is reconciled by holding to the natural construction of the language and the reasonable pur-pose of Congress, by which the limitation of one year to the right of pre-emption in the sixth section is applicable alone to the general body of the public lands not granted away, and not excepted out of the operation of the pre-emption law of 1841, as the school lands were, by the very terms of the previous part of the section; while sect. 7 is left to control the right of pre-emption to the school sections, as it purports to do.

In this view of the matter, the very learned argument of counsel on the question of the character of the grant as to the time when the title vests in the State, and the copious refer-ence to the acts of Congress and of the State, as authorizing pre-emption after the expiration of one year from the date of the statute, are immaterial to the issue. Actual settlement before survey made accompanied the grant as a qualifying limitation of the right of the State, which she was bound to recognize when it was found to exist, and for which she was authorized to seek indemnity in another quarter. There is, therefore, no necessity for any additional legislation by Congress to secure the pre-emption right as to school sections, and no question as to whether it has so legislated, or whether such legislation would be valid; and we do not enter on those ques-tions.

No question is made in the argument here, none seems to

have been made in the Supreme Court of the State, and none is to be found in its opinion in the case, as to the admissibility of the rejected testimony, if the fact which it sought to establish could be recognized by the court.  Nor do we think such objection, if made, is sustainable.  The testimony offered does not go to impeach or contradict the patent of the United States, or vary its meaning.  Its object was to show that the State of California, when she made her conveyance of the land to defendant, had no title to it ; that she never had ; and that by the terms of the act of Congress, under which she claimed, the only right she ever had in regard to this tract was to seek other land in lieu of it.  The effect of the evidence was to show that the title set up by defendant under the State was void, — not merely voidable, but void *ab initio*.  For this purpose, it was competent, and it was sufficient ; for it showed, that when the survey was actually made, and the land in question was found to be part of section thirty-six, plaintiff had made a settlement on it, within the meaning of the seventh section of the act of 1853, and the State could do nothing but seek indemnity in other land.

It has always been held, that an absolute want of power to issue a patent could be shown in a court of law to defeat a title set up under it, though where it is merely voidable the party may be compelled to resort to a court of equity to have it so declared.  *Stodard* v. *Chambers,* 2 How. 317 ; *Easton* v. *Salisbury,* 21 id. 426 ; *Reichart* v. *Felps,* 6 Wall. 160.

*Judgment reversed, and case remanded with direction to order a new trial in conformity to the principles of this opinion.*

MR. JUSTICE FIELD took no part in the decision of this case.