## Case No. 14,785.

### UNITED STATES v. CHAPMAN.

[5 Sawy. 528; 25 Int. Rev. Rec. 281; 9 Reporter, 134; 11 Chi. Leg. News, 391.] [1]

Circuit Court. D. California. May 26, 1879.

PUBLIC LANDS—SIOUX SCRIP LOCATION—OCCUPIED LAND—CONTEST—PATENT PENDING—PRE-EMPTION — STATE LOCATION.

1. In the location of Sioux half-breed scrip, the rules and regulations of the United States land-office require that in all cases where not located by the party to whom the scrip issued in person, the application to locate must be accompanied with a power of attorney from said party authorizing the same.

[Cited in Chapman v. Polack, 58 Cal. 555, 5 Pac. 232; Lee v. Justice Mining Co., 29 Pac. 1024, 2 Colo. App. 112.]

2. While a contest between a purchaser from the state, on a state selection, and a claimant under Sioux half-breed scrip location, arising under the provisions of the act of congress of July 23, 1866, is pending and undetermined before the register and receiver of the United States land-office, no patent can properly issue.

3. The act of congress under which the Sioux half-breed scrip was issued does not permit it to be located on land occupied by another; and the land in this case being occupied by the holder of a state title, with valuable improvements thereon, was not subject to location by said scrip.

[Cited in Chapman v. Polack, 70 Cal. 492, 11 Pac. 767; Polack v. Gurnee, 66 Cal. 267, 5 Pac. 229, 610.]

4. At the time the state agent applied to select the land in question, January 15, 1868, there being no pre-emption or other valid claim thereto, the state selection was good as one made on surveyed lands.

Proceeding to set aside patent.

Walter Van Dyke, for complainant.

George A. Nourse, for plaintiff.

SAWYER, Circuit Judge. This is a proceeding on the part of the government, at the instance of Mrs. Mary Polack, to set aside a patent for the quarter section of land described in the bill, on which the Geyser Springs and hotel are located, in Sonoma county. The patent was issued to Daniel Freinere, and is based upon a location, or attempted location, of Sioux half-breed scrip. Mrs. Polack claims the same land under a state selection, as a portion of the five hundred thousand acre grant. In April, 1854, one Archibald C. Godwin employed the county surveyor of Sonoma county to make a survey for him, the land being then unsurveyed public land, and he located, or assumed to locate, two school land warrants for three hundred and twenty acres each on the tract of land so surveyed, including the premises in controversy, for said Godwin, who was then the owner of said warrants. Said warrants were issued by the state of California under the act of May 3, 1852, to provide for the issuing and sale of school land warrants for the five hundred thousand acres of land

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 9 Reporter, 134, contains only a partial report.]

granted to the state by act of congress of September 4, 1841. By proper mesne conveyances and assignments the right and title of said Godwin to said premises and the warrants located thereon became vested in Mrs. Mary Polack (then Mrs. Hart) in May, 1862. Her immediate grantor and assignor before that time had instituted an action in the district court for Sonoma county to oust some parties who had intruded into said premises, to wit: Godwin, Levy and Ewing, in which action a judgment had been rendered in favor of the plaintiff against said defendants. A writ of possession was issued on this judgment, and in May, 1863, the sheriff of Sonoma county put Mrs. Polack, as successor in interest of the plaintiff in that action, into possession and turned out the intruders. From that time till December 31, 1869, it is admitted that Mrs. Polack, by herself and tenants, had the exclusive possession and control of said premises and was in the actual occupation thereof; that during this period she had expended in adding improvements to the place between three and four thousand dollars, and that the value of the improvements purchased and added was over twelve thousand dollars.

In September, 1862, Mrs. Polack took steps to have a resurvey of the premises she had purchased and relocation of said warrants thereon, so as to adjust the lines according to the system of surveys adopted by the United States, in accordance with the act of the state, passed April 18, 1859. This act requires that the applicant for a survey and location should make an affidavit containing, among other things, a statement that there was no adverse claim to the land sought to be located.

In the affidavit filed by Mrs. Polack it was stated that there was no valid adverse claim, and it is contended that this was not a compliance with the statute. The affidavit, however, refers to the matter of the action by her grantor against the parties who had intruded into the premises, stating that it had been finally decided in favor of her title, and says that it is the only claim adverse to hers. This, it would seem, is a substantial compliance with the law, for this claim had already been finally adjudged invalid, and it was so stated; and this being the only adverse claim, and having already been declared void, it necessarily results that there was none within the meaning of the act, and it so appears in the affidavit. In my judgment the affidavit is sufficient. In the view taken of the case, however, it is not necessary to pass finally upon this question.

The map of the United States survey of township 11 N., embracing the land in question, was filed in the United States land-office January 14, 1868. On the next day, January 15, 1868, the state locating agent filed an application on behalf of the state of California for Mrs. Polack, and on her application to him for that purpose—for the loca-

tion of said school land warrants—he located them on surveyed lands nearest conforming to the lands on which they had been located, to wit: the north half of section 13 and north half of section 14 of said township. This application was received and approved by the register of the United States land-office, and thereafter, on April 14, 1868, the said register of the United States land-office issued a certificate certifying that at the date of said filing and selection on the part of the state there was no evidence shown by the records or files in his office that any pre-emption, homestead or other right had attached to said land.

The record of the Sioux scrip in the United States land-office for 1868 shows entries up to July, and no entry for the application of Daniel Freinere for the north-east quarter of section 13—land in controversy—and also shows an erasure of the entries down to July 18, 1868, and then the insertion of the application of Daniel Freinere as of January 14, 1868, and the erased names and applications carried below. In explanation of this it is said the scrip in the name of Freinere for 444 E., the one in question, was mislaid in the office, and not entered on the books till the time it was found in July. It appears that W. S. Chapman, the defendant, had attempted to locate the same scrip on this land in 1866, before the United States survey of the land. Inasmuch as the Indian, or half-breed, never lived on the land or resided in the state, the land being unsurveyed, no such location could then legally be made.

There is indorsed on the application to locate this Sioux scrip the words: "Power to locate with R. R. No. 7, S. F. land-office," meaning that the power of attorney of the party to whom the scrip was issued, Freinere, authorizing Chapman to make the location, was with another piece of scrip issued to the same party, to wit: "The piece of scrip No. 444, letter B," which had been previously located in the same land-office on another tract of land, and had been indorsed in said office "R. & R. No. 7." This latter piece of scrip with the application to locate the same, it appears, was returned to Chapman through Britton & Grey, his attorneys at Washington, in 1868, on account of some defect in the location, and subsequently located in the United States land-office at Stockton on another tract of land. The power of attorney found with this scrip, as so located at Stockton, was only a special power or to locate that particular scrip. There was no power shown to locate the scrip 444 E., the one attempted to be located on the land in question. The rules and regulations of the land-office, require that in all cases where not located by the party to whom the scrip issued in person, the application to locate must be accompanied with the power of attorney authorizing the same. The officers of the local land-office having recognized said

scrip as having been presented for location January 14, 1868, although not then entered on their books, a contest arose as between it and the state selection.

The act of congress of July 23, 1866, [14 Stat. 209,] to quiet land titles in California, provides, that in cases where the state had theretofore made selections of any portions of the public domain in part satisfaction of any grant made to said state by act of congress, and had disposed of the same in good faith under her laws, the lands so selected were confirmed to the state; and where such selections were on unsurveyed lands when marked off and designated, they were to have the force and effect of a pre-emption right, and if the lines of the location and United States survey did not agree, the selection should be so changed as to include those legal subdivisions which nearest conform to the identical land included in state survey and selection. The holder of the state title is allowed the same time after the township plat is filed in the local land-office as a pre-emptor to present and prove up his purchase and claim, and the location was in time.

The state locating agent, in his application of January 15, 1868, on behalf of Mrs. Polack, based the claim of the state on this act of congress, as well as under the act of 1841, providing for the selection on surveyed land. On the motion of Chapman, the register of the United States land-office cited the state to appear at a hearing before that officer, to determine the respective rights between the state selection and the scrip location.

The attorney of Mrs. Polack holding the state title, and Chapman's attorney for the scrip location, appeared and entered on the trial July 9, 1868. The case having been adjourned to the next day, the United States surveyor-general notified the register that the township plat embracing this land was suspended, and thereupon the hearing was also suspended, and continued so suspended until August, 1874, after the suspension of the township plat had been removed. In the meantime, while the contest was pending and undetermined, and while the survey and trial were thus suspended, by some inadvertence, a patent was issued to Daniel Freinere, June 1, 1869, for the scrip location, and came into the possession of Chapman through his attorneys at Washington. As soon as the attention of the department was called to the fact, that the contest between the state selection and scrip location was still pending, the commissioner of the general land-office, on May 17, 1870, demanded a return of the patent, which was refused.

The purchaser of the state title under the act of 1866, has a right to have his claim to the land, selected under the state laws, fully passed upon by the United States land-office: "The register is to examine his claim, the character, the right asserted and the cer-

tificates under which he claims." Huff v. Doyle, 93 U. S. 563. No patent could properly issue to an opposing claimant for the same land while this hearing was regularly pending and remained undetermined.

In addition to this, as already stated, at the time it was attempted to locate the Sioux scrip, the land was occupied by Mrs. Polack and her tenants, and there were valuable improvements thereon belonging to her. The act of congress under which the scrip is issued does not permit it to be located on occupied lands, except in the district in the then territory of Minnesota mentioned in the act, and on behalf of the party in occupation. Hence, this land at the time was not subject to location by such scrip; and there being no pre-emption or other valid claim, the state selection of January 15, 1868, was good as a selection on surveyed lands.

I am of the opinion, therefore, that the patent was improperly issued, and that it should be set aside, and it is so ordered. Decree accordingly.