LEE, APPELLANT, v. THE JUSTICE MINING COMPANY, APPELLEE.

1. ALIENS CANNOT LOCATE MINING CLAIMS.

None but citizens of the United States and those who have declared their intention to become such, can acquire any right to public mineral lands by location.

2. ASSIGNMENT OF LOCATION BY ALIEN VESTS NO RIGHT.

An alien cannot by assignment or conveyance to a citizen transfer any better or greater right than he himself possesses.

3. HOLDER OF LEGAL TITLE, WHEN TRUSTEE.

If for any reason recognized by courts of equity as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience and by law, it ought to go to another, a court of equity will convert him into a trustee of the true owner and compel him to convey the legal title.

4. SAME.

When a location has been attempted to be made by an alien and his assignee has obtained a receiver's receipt based thereon, one who had made a valid location upon the premises prior to the issuance of the receiver's receipt may invoke the principle above stated for the purpose of acquiring the legal title.

*Appeal from the District Court of Pitkin County.*

COMPLAINANT alleges that he is a citizen of the United States and over the age of 21 years; that on the 20th day of May, 1887, he entered upon the unoccupied and unappropriated public mineral domain of the United States, and at the said unoccupied point of his entry sunk a shaft to the depth of more than ten feet below the lowest part of the rim there-

of, and therein and thereby discovered and disclosed a well-defined body of mineral bearing rock in place, containing silver and other precious metals; that at said shaft and said point of discovery, he posted a stake on which was placed a plain sign and notice, containing the name of the lode, to wit: The Aftermath, the name of the locator and the date of the discovery, the number of feet claimed on each side of the center of the discovery shaft; and staked the said claim at the corners and at the center of the said line with stakes marked and hewn on the sides in towards said claim, and in all other respects complied with the state and federal statutes relative to the location of mining claims.

And thereupon caused to be made out a location certificate, containing all of the several matters aforesaid, together with a description of said claim.

That the Justice Mining Claim was located on the 8th day of October, 1885, by one Edwin Doust, and that at the time of said location the said Doust was an alien and had never heretofore, or yet, declared his intention to become a citizen of the United States.

That the said claim so located by the said Doust covers a part and portion and conflicts with the claim located by plaintiff and called the Aftermath lode mining claim, for the entire width of the said Aftermath lode, to wit: three hundred feet, and for a distance in length of upwards of five hundred feet.

That after the said location, the said Edwin Doust, as plaintiff is informed and believes and so charges the fact to be, made a contract with one William Lawson on the 13th day of October, A. D. 1885, to sell and transfer the said claim to said William Lawson.

That on the said day he made, executed and delivered to John W. Richards, one of the defendants herein, a deed transferring all his right, title and interest in and to said premises to the said Richards; that said transfer was utterly and entirely without consideration, having no express consideration except the sum of one dollar, and was made solely

and simply that the title might pass to a citizen of the United
States for the purpose of procuring a title to the claim from
the government. That concurrently with the said deed to
the said Richards, and in execution of the agreement to trans-
fer the title by Lawson, the said Richards executed a title
bond to the said Lawson, wherein and whereby he agreed to
convey to said Lawson the said Justice Mining Claim with
other properties for certain considerations therein named.
·That at the time of the transfer by said Lawson, and the
making of said agreement, the said Lawson was and is now
an alien, and has never declared his intention to become a
citizen of the United States.

That notwithstanding the fact that the said property was
apparently by said deed conveyed to said Richards, the said
Richards held the same for the sole use and benefit of said
Lawson, agreeing to hold title to said claim until after the
procurement of the government title to said property; where-
upon he was to transfer the same to Lawson, or to whomsoever
he might direct. And that, while the said property thus
stood in the name of John W. Richards, he made application
for patent from the United States, and on or about the 20th
day of February, 1886, he commenced his advertisement there-
for, which said application was completed on April 23, 1886;
that the title, so far as the records are concerned, and so far
as the public is concerned, stood in the name of the said Rich-
ards from the time of the transfer to him by said Doust until
the 11th day of June, 1887, at which time there was recorded
a deed from said Richards to Joseph Ruse as trustee for the
Justice Mining Company.

That the said Joseph Ruse had not the slightest interest
in the said property, but was simply invested with a naked
legal trust, holding the title thus conveyed under an obliga-
tion to transfer it to the said mining company in pursuance
of the scheme heretofore and hereinafter stated. That the
said deed to said Joseph Ruse bears date April 30, 1886, and
was never filed for record or recorded until June 11, 1887,
and was executed for the express and nominal consideration

of one dollar. That a receiver's receipt was issued to John W. Richards on June 14, 1887, and duly filed in the recorder's office June 17, 1887.

That the Justice Mining Company was organized and became incorporated on the 30th day of April, 1886, with a nominal capital of one hundred thousand dollars. That the share division was ten thousand shares; that the corporation was organized concurrently with the execution of said deed to said Joseph Ruse as trustee, and that the said deed was executed upon the express understanding and agreement by and between said Ruse and said Richards and said Lawson, that the said Richards should hold title to said property until such time as the government title thereto should be acquired, and that the deed should remain in escrow with said Ruse to be transferred to the company when the title should be obtained, and that when the title should be procured, then the title should be conveyed to the Justice Mining Company, which company should transfer to said Lawson his proportionate sharehold interest in the said corporation.

That the organization of said corporation, as well as the transfer of title to said Richards and Ruse, was a part and parcel of the scheme to obtain the title from the government which should not be open to question, for the reason that the title was in a citizen of the United States and not an alien. That of all the several acts and facts aforesaid the plaintiff was not advised until after the application for patent had been made and until the time of the issuing of the receiver's receipt from the government.

That immediately upon the procurement of the government title as aforesaid, and the transfer of the said title from the said Ruse to the said company, the company issued its shares of stock of the nominal value of fifty-six thousand dollars, and fifty-six hundred in numbers, and delivered the same to William Lawson as the consideration of the transfer of the title of the said Justice Mining Company to said corporation. That upon the organization of said company various and sundry other properties were conveyed to it, together

with said claim.   That prior to the time of the transfer of said property by the said trustee to said corporation, and while the title still remained in said fraudulent grantees, Richards and Ruse, the plaintiff's title had already become vested by reason of his location of the Aftermath lode mining claim and by reason of the absolute invalidity and nullity of the title of the said Lawson and Doust to the said Justice Mining Claim.

That the said receiver's receipt so issued is a cloud upon the title of plaintiff to the Aftermath lode mining claim, and that it is impossible for plaintiff to bring an action in eject-ment for the purpose of determining the title of the said company to said claim, because of the fact that in an action in ejectment the company would set up the possession of the legal title acquired from the government in bar of any action which plaintiff might bring to determine his right to the Aftermath lode mining claim, in so far as it conflicts with the said Justice Mining Claim.

That said property is valuable only for the mineral which it contains.   That the Justice Mining Company is without any property or means whatsoever save the mining claims which it holds, which decrease in value as fast as the mineral is taken and removed therefrom.   That Lawson is absolutely insolvent, and threatens to sell and dispose of his shares, and that plaintiff has filed in the United States land office his petition in the form of the protest, asking the withholding of the patent to the Justice lode until such time as this suit may be heard and determined.

To this complaint a demurrer was interposed:

First.  Because the action should be an action of ejectment and not an action in the nature of a bill to quiet title.

Second.  Because the United States alone can take advan-tage of the alleged fraud.

Third.  Because no fraud or violation of the law is alleged in the complaint either against the defendants or the United States.

Fourth.  Because the allegations of the alleged fraud can

be pleaded in an action of ejectment against alleged bar of receiver's receipt.

Fifth. Because the complaint does not state facts sufficient to constitute a cause of action.

Sixth. Because the court has no jurisdiction of the subject-matter of the case.

The demurrer to the complaint was sustained and plaintiff elected to stand by the complaint and prayed an appeal to the supreme court of the state of Colorado, which was duly perfected and the cause thereafter transferred under the statute to this court.

MR. C. R. BELL and MR J. B. BISSELL, for appellant.

Messers. WILSON & STIMSON, MR. A. W. RUCKER and Messrs. TITCOMB & EWING, for appellee.

RICHMOND, P. J., after stating the facts, delivered the opinion of the court.

From the foregoing it will be observed that two questions are presented for our consideration:

1. Is the action a proper one. Can the plaintiff institute an equitable action for the purpose of determining his title under the state and federal statutes to a mining claim notwithstanding the fact that the receiver's receipt has been issued to one of the defendants who has transferred the title thus acquired to the Justice Mining Company.

2. Can an alien acquire such an interest in a mining claim by location as can be transferred to one or more parties by various conveyances, and through such claim so transferred can title be obtained from the government of the United States against which plaintiff cannot assert a prior acquired legal right.

By the demurrer it is admitted that the plaintiff is a citizen of the United States.

That on the 20th day of May, 1887, he entered upon and

located the Aftermath mining claim, which was then unoccupied and unappropriated public mineral domain.

That he discovered and disclosed in said claim a well defined body of mineral bearing rock in place, containing silver and precious metals.

That he properly complied with the state and United States laws in locating the claim.

That Edwin Doust located his claim in October, 1885. That at the time of said location and up to the time of filing the complaint in this action he was an alien. That the claim located by Doust conflicts with the Aftermath lode to the extent of three hundred feet in width and upwards of five hundred feet in length.

That Doust entered into a contract to sell to Lawson, and on the 13th of October executed a deed to John W. Richards without consideration solely for the purpose of having Richards procure the title to the claim, he being a citizen of the United States.

That Richards executed a title bond to Lawson who was an alien; that while the property stood in the name of Richards he made his application for a patent and subsequently acquired a receiver's receipt, and thereafter transferred his right to Joseph Ruse as trustee for the Justice Mining Company.

That Ruse thereafter transferred to the company, and received in consideration, shares of stock of the nominal value of fifty-six thousand dollars.

That prior to the time of the transfer by the trustee to the company, plaintiff's title had become vested by reason of his location of the Aftermath lode mining claim, and by reason of the invalidity of title in Doust or Lawson.

That the mining company is without means to satisfy a judgment for damages and that Lawson is equally insolvent.

To recapitulate the foregoing amounts simply to this, that whatever title the Justice Mining Company has to the land in controversy, has been acquired through the location of an alien, and conveyance by him to an alien, and a subsequent

conveyance to a citizen of the United States solely for the purpose of acquiring title, and who conveyed to Ruse to hold as trustee for the company who thereafter conveyed by direction of the alien to the Justice Mining Company.

For personal convenience we deem it proper to consider the second issue first. And this presents the question of an alien's right to acquire such an interest as can be sold, and upon which a subsequent title can be predicated.

In the case of *Warren Hussey et al., Application for the Kempton Mine*, Sickles' Mining Laws and Decisions, 92, Delano, secretary of the interior department, uses this language: ",An assignor can transfer no greater interest to his assignee than he himself possesses. While he is unnaturalized, he has no right to locate a mine. If he does so, and disposes of it before naturalization, a subsequent naturalization would not, in my opinion, save his location. If, therefore, it appeared in this case that the original locators were not citizens, or had not declared their intention to become such at the time their location was made, and that they had not become citizens when they transferred the mine, I should have no hesitation in holding that the transfer was invalid and the claim of the applicants was not good."

In the case of *Golden Fleece v. Cable Con. Co.*, 12 Nevada, 312, it was held that, " An alien who has never declared his intention to become a citizen, is not a qualified locator of mining ground, and he cannot hold a mining claim either by actual possession or by location, against one who connects himself with the government title by compliance with the mining law."

In *North Noonday Min. Co. v. Orient Mining Co.*, 1 Federal Reporter, 522, it was held that, " Under the act of congress of May 10, 1872, relating to the public mineral lands, none but citizens of the United States, and those who have declared their intention to become such, can acquire any right to such lands by location."

In *Tibbits et al. v. Ah Tong et. al.*, 4 Montana, 536, the supreme court of Montana held, in an opinion delivered by

Wade, C. J., " That the right to locate and the right to possess a mining claim go together; they are part of the same grant, and neither can exist without the other.   If, therefore, the grant by assignment or conveyance falls upon an alien, incapable of making a location, his possession is of no consequence, the possession being transferred to one who, under the statutes, is incapable of becoming a purchaser from the government.   Such possession being part and parcel of the purchase is illegal, and is equivalent to an abandonment, and opens the ground to location and possession by any qualified person.

" The alien cannot become the government's grantee, and cannot become so in a roundabout way, by being the grantee of the government's grantee."

The last cited case is somewhat analogous to the case at bar.   Here the location was made by an alien who transferred to an alien, and by the last a transfer was made to a citizen who acquired the title from the government, and through these various conveyances the title ultimately became the property of the Justice Mining Company, but nevertheless the original locator, Doust, retained an interest.   All of the individuals, as appears by the complaint, were interested in the scheme to acquire the title to the land which the plaintiff herein had located, as a citizen of the United States, and in locating had fully complied with all the provisions of the mining laws.   Before the title had passed to the Justice Mining Company from Ruse as trustee, his claim had intervened, against which the Justice Mining Company assert no right or claim, nor does it attempt so far as the present proceeding is concerned to attack his *bona fides* and his location.

In the case of *Bohanon v. Howe*, 17 Pac. Rep. 583, the supreme court of Idaho held that, " Under the act of congress of May 10, 1872, only citizens of the United States, and persons who have declared their intention to become such, can acquire any right of possession, by location or otherwise, of mineral lands on the public domain."

In *Lee Doon v. Tesh*, 8 Pac. Rep. 621, this doctrine is announced: "Persons who are not citizens of the United States, or have not declared their intention to become such, cannot acquire any vested right to the possession of a mining claim on United States public lands." *Territory of Montana, Respondent, v. Lee*, 2 Montana, 124.

In my researches I have been unable to find any authority which conflicts with the general doctrine thus announced: That an alien unnaturalized and who has not declared his intention to become a citizen of the United States, can acquire no right by location to any of the mineral lands of the United States. This being true, what interest then could the assignee legally acquire and convey through Richards to Ruse as trustee for the defendant company; and what interest so acquired by the company can it assert against the claim of the plaintiff, who is admitted to be a citizen and a proper locator, and who had made a legal location prior to the title becoming so vested in the company.

It seems to me that to argue that the title thus acquired is valid and legitimate is, to use the language of another, "a roundabout way to defeat the express provisions of the law." Provisions which every citizen of the United States will recognize as eminently proper and just, — provisions which the courts have universally held to be constitutional and legitimate legislation, and which no court of equity ought in the face of proper showing to permit to be negatived by a combination of one who is a citizen and two who are not.

Now is the action a proper one? We need not go beyond the doctrine laid down by the supreme court of the United States in cases cited by the appellee.

In *Johnson v. Towsley*, 13 Wallace, 80, Justice Miller, in delivering the opinion of the court, said: "That the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts and in all forms of judicial proceedings, where this title must control, either by reason.

of the limited powers of the court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained. On the other hand, there has always existed in the courts of equity the power in certain classes of cases to inquire into and correct mistakes, injustice, and wrong, in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown, or other executive branch of the government, have been corrected or declared void, or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle. In dealing with the public domain under the system of laws enacted by congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially *ex parte*, and peculiarly liable to the influence of frauds, false swearing, and mistakes. These are among the most ancient and well established grounds of the special jurisdiction of courts of equity just referred to, and the necessity and value of that jurisdiction are nowhere better exemplified than in its application to cases arising in the land office."

In *Shepley et al. v. Cowan et al.*, 91 U. S. 330, it was held that, " The officers of the land department are specially designated by law to receive, consider and pass upon the proofs presented with respect to settlements upon the public lands, with a view to secure rights of pre-emption. *If they err* in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from

one officer to another of the department, and perhaps, under special circumstances, to the president."

In *Moore v. Robbins*, 96 U. S. 530, in passing upon a similar question, the court say : " *If they err* in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions."

In *Steel v. Smelting Co.*, 106 U. S. 447, Justice Field, in delivering the opinion after passing upon the validity of the patent, uses this language : " Until set aside or enjoined, it must, of course, stand against a collateral attack with the efficacy attending judgments founded upon unimpeachable evidence.   So with a patent for land of the United States, which is the result of the judgment upon the right of the patentee by that department of the government, to which the alienation of the public land is confided, the remedy of the aggrieved party must be sought by him in a court of equity, if he possess such an equitable right to the premises as would give him the title if the patent were out of the way. If he occupy with respect to the land no such position as this, he can only apply to the officers of the government to take measures in its name to vacate the patent or limit its operation."

These authorities and the authorities cited in the cases sufficiently sustain the position assumed by appellant, to the effect that they could not, by ejectment or other proceedings at law, legitimately inquire into the validity of the defendant company's title.   That it was from necessity their duty, and under the decisions their right, to appear in a court of equity and therein assert their equitable right to the disputed land.

This is not a proceeding between the government and individuals, but a proceeding between private parties, wherein it is insisted that the claim or title of one is inequitable and void, because from its inception there has been no compliance

with the provisions of the state and federal statutes relative to the location and acquisition of title to mining claims, and that before any right or title had inured to the Justice Mining Company, complainant, as a citizen of the United States, had made the proper location and secured the right as such citizen, by full compliance with the law, to acquire the title to the disputed land.

In the *Eureka Case*, 4 Saw. 319, Field, J., uses this language : " A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency it is ironclad against all mere speculative inferences. But it is equally as clear, and as well settled, that, if the statute has not been complied with, and a patent issued without authority of law, no substantial title is acquired."

" A patent issued without authority of law is void." *U. S. v. Chapman*, 5 Saw. 528 ; *Stoddard v. Chambers*, 2 How. 285 ; *Morton v. Nebraska*, 21 Wall. 660 ; *Sherman v. Buick*, 93 U. S. 216.

Believing the foregoing to be the correct doctrine, we have but to quote further in support of complainant's bill.

In *Johnson v. Towsley, supra*, it is said, " That if for any reason recognized by courts of equity as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience and by the laws which congress has made upon the subject, it ought to go to another, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." *Stark v. Starrs*, 6 Wall. 402.

" The relief given in this class of cases is founded on the theory that the title which has passed from the United States to the defendant, inured in equity to the benefit of plaintiff, and a court of chancery gives effect to this equity, according to its forms, in several ways." *Silver v. Ladd*, 7 Wall. 228.

The supreme court of this state has practically determined this question in the case of *Seymour v. Fisher et al.*, 16 Colo. 189.

In the case of *Seymour v. Fisher et al.*, the court uses this language: "It is needless to say that an investigation by a court of equity in the case now supposed is not for the purpose of attacking or annulling the patent itself; its object is to give the benefit of the patent to the proper party; the party who in equity is entitled to the premises. And when the foundation is laid by proof showing clearly the fraud of the applicant, whereby the complaining party has been kept in ignorance of the existence of the patent proceedings, the court may consider the right of such party to the ground in controversy." *Vide: Craig v. Leitensdorfer*, 123 U. S. 189.

In *Belk v. Meagher*, 104 U. S. 279, Waite, C. J., delivering the opinion of the court said: "The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. Locations can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. * * * The right to possession comes only from a valid location. Consequently, if there is no location there can be no possession under it. Location does not necessarily follow from possession, but possession from location."

It is needless to cite further authorities in support of the conclusion here reached. We are clearly of the opinion that so far as the record in this case at present discloses, the Justice Mining Company's title, based as it is upon an invalid location, cannot be supported by authority, reason, or statute.

To prove and establish a right to a patent from the government of the United States, it was clearly the duty of the party seeking the title, under the provisions provided by statute, to prove a valid location and a thorough compliance with the mineral laws.

If the allegations of the bill be true, such proof could not be made and cannot now be made, and the government officials were not authorized to issue a certificate of purchase or a patent for the land.

We think that the court erred in sustaining the demurrer to the complainant's bill.

The judgment must be reversed and the cause remanded for further proceedings.

*Reversed.*

BISSELL, J., having been of counsel, not sitting.