Richmond, P. J.,
after stating the facts, delivered the opinion of the court.
From the foregoing it will be observed that two questions are presented for our consideration:
1. Is the action a proper one. Can the plaintiff institute an equitable action for the purpose of determining his title under the state and federal statutes to a mining claim notwithstanding the fact that the receiver’s receipt has been issued to one of the defendants who has transferred the title thus acquired to- the Justice Mining Company.
2. Can an alien acquire such an interest in a mining claim by location as can be transferred to one or more parties by various conveyances, and through such claim so transferred can title be obtained from the government of the United States against which plaintiff cannot assert a prior acquired legal right.
By the demurrer it is admitted that the plaintiff is a citizen of the United States.
That on the 20th day of May, 1887, he entered upon and *118 located the Aftermath mining claim, which was then unoccupied and unappropriated public mineral domain.
That he discovered and disclosed in said claim a well defined body of mineral bearing rock in place, containing silver and precious metals.
That he properly complied with the state and United States laws in locating the claim.
That Edwin Doust located his claim in October, 1885. That at the time of said location and up to the time of filing the complaint in this action he was an alien. That the claim located by Doust conflicts with the Aftermath lode to the extent of three hundred feet in width and upwards of five hundred feet in length.-
That Doust entered into a contract to sell to Lawson, and on the 13th of .October executed a deed to John W. Richards without consideration solely for the purpose of having Richards procure the title to the claim, he being a citizen of the United States.
That Richards executed a title bond to Lawson who was an alien; that while the property stood in the name of Richards he made his application for a patent and subsequently acquired a receiver’s receipt, and thereafter transferred his right to Joseph Ruse as trustee for the Justice Mining Company.
That Ruse thereafter transferred to the company, and received in consideration, shares of stock of the nominal value of fifty-six thousand dollars.
That prior to the time of the transfer by the trustee to the company, plaintiff’s title had become vested by reason of his location of the Aftermath lode mining claim, and by reason of the invalidity of title in Doust or Lawson.
That the mining company is without means to satisfy a judgment for damages and that Lawson is equally insolvent.
To recapitulate the foregoing amounts simply to this, that whatever title the Justice Mining Company has to the land in controversy, has been acquired through the location of an alien, and conveyance by him to an alien, and a subsequent *119 conveyance to a citizen of the United States solely for the purpose of acquiring title, and who conveyed to Ruse to hold as trustee for the company who thereafter conveyed by direction of the alien to the Justice Mining Company.
For personal convenience we deem it proper to consider the second issue first. And this presents the question of an alien’s right to acquire such an interest as can be sold, and upon which a subsequent title can be predicated.
In the case of Warren Hussey et al., Application for the Kempton Mine, Sickles’ Mining Laws and Decisions, 92, Delano, secretary of the interior department, uses this language : “An assignor can transfer no greater interest to his assignee than he himself possesses. While he is unnaturalized, he has no right to locate a mine. If he does so, and disposes of it before naturalization, a subsequent naturalization would not, in my opinion, save his location. If, therefore, it appeared in this case that the original locators were not citizens, or had not declared their intention to become such at the time their location was made, and that they had not become citizens when they transferred the mine, I should have no hesitation in holding that the transfer was invalid and the claim of the applicants was not good.”
In the case of Golden Fleece v. Cable Con. Co., 12 Nevada, 312, it was held that, “An alien who has never declared his intention to become a citizen, is not a qualified locator of mining ground, and he cannot hold a mining claim either by actual possession or by location, against one who connects himself with the government title by compliance with the mining law.”
In North Noonday Min. Co. v. Orient Mining Co., 1 Federal Reporter, 522, it was held that, “ Under the act of congress of May 10, 1872, relating to the public mineral lands, none but citizens of the United States, and those who have declared their intention to become such, can acquire any right to such lands by location.”
In Tibbits et al. v. Ah Tong et. al., 4 Montana, 536, the supreme court of Montana held, in an opinion delivered by *120 Wade, C. J., “ That the right to locate and the right to possess a mining claim go together; they are part of the same grant, and neither can exist without the other. If, therefore, the grant by assignment or conveyance falls upon an alien, incapable of making a location, his possession is of no consequence, the possession being transferred to one who, under the statutes, is incapable of becoming a purchaser from the government. Such possession being part and parcel of the purchase is illegal, and is equivalent to an abandonment, and opens the ground to location and possession by any qualified person.
“ The alien cannot become the government’s grantee, and cannot become so in a roundabout way, by being the grantee of the government’s grantee.”
The last cited case is somewhat analogous to the case at bar. Here the location was made by an alien who transferred to an alien, and by the last a transfer was made to a citizen who acquired the title from the government, and through these various conveyances the title ultimately became the property of the Justice Mining Company, but nevertheless the original locator, Doust, retained an interest. All of the individuals, as appears by the complaint, were interested in the scheme to acquire the title to the land which the plaintiff herein had located, as a citizen of the United States, and in locating had fully complied with all the provisions of the mining laws. Before the title had passed to the Justice Mining Company from Ruse as trustee, his claim had intervened, against which the Justice Mining Company assert no right or claim, nor does it attempt so far as the present proceeding is concerned to attack his bona fides and his location.
In the case of Bohanon v. Howe, 17 Pac. Rep. 583, the supreme court of Idaho held that, “ Under the act of congress of May 10, 1872, only citizens of the United States, and persons who have declared their intention to become such, can acquire any right of possession, by location or otherwise, of mineral lands on the public domain.”
*121 In Lee Doon v. Tesh, 8 Pac. Rep. 621, this doctrine is announced : “ Persons who are not citizens of the United States, or have not declared their intention to become such, cannot acquire any vested right to the possession of a mining claim on United States public lands.” Territory of Montana, Respondent, v. Lee, 2 Montana, 124.
In my researches I have been unable to find any authority which conflicts with the general doctrine thus announced: That an alien unnaturalized and who has not declared his intention to become a citizen of the United States, can acquire no right by location to any of the mineral lands of the United States. This being true, what interest then could the assignee legally acquire and convey through Richards to Ruse as trustee for the defendant company; and what interest so acquired by the company can it assert against the claim of the plaintiff, who is admitted to be a citizen and a proper locator, and who had made a legal location prior to the title becoming so vested in the company.
It seems to me that to argue that the title thus acquired is valid and legitimate is, to use the language of another, “ a roundabout way to defeat the express provisions of the law.” Provisions which every citizen of' the United States will recognize as eminently proper and just, — provisions which the courts have universally held to be constitutional and legitimate legislation, and which no court of equity ought in the face of proper showing to permit to be negatived by a combination of one who is a citizen and two who are not.
Now is the action a proper one? We need not go beyond the doctrine laid down by the supreme court of the United States in eases cited by the appellee.
In Johnson v. Towsley, 13 Wallace, 80, Justice Miller, in delivering the opinion of the court, said: - “ That the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts and in all forms of judicial proceedings, where this title must control, either by reason. *122 of the limited powers of the court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained. On the other hand, there has always existed in the courts of equity the power in certain classes of cases to inquire into and correct mistakes, injustice, and wrong, in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from che crown, or other executive branch of the government, have been corrected or declared void, or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle. In dealing with the public domain under the system of laws enacted by congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially ex parte, and peculiarly liable to the influence of frauds, false swearing, and mistakes. These are among the most ancient and well established grounds of the special jurisdiction of courts of equity just referred to, and the necessity and value of that jurisdiction are nowhere better exemplified than in its application to cases arising in the land office.”
In Shepley et al. v. Cowan et al., 91 U. S. 330, it was held that, “ The officers of the land department are specially designated by law to receive, consider and pass upon the proofs presented with respect to settlements upon the public lands, with a view to secure rights of pre-emption. If they err in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from *123 one officer to another of the department, and perhaps, under special circumstances, to the president.”
In Moore v. Robbins, 96 U. S. 530, in passing upon a similar question, the court say: “ If they err in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions.”
In Steel v. Smelting Co., 106 U. S. 447, Justice Field, in delivering the opinion after passing upon the validity of the patent, uses this language: “ Until set aside or enjoined, it must, of course, stand against a collateral attack with the efficacy attending judgments founded upon unimpeachable evidence. So with a patent for land of the United States, which is the result of the judgment upon the right of the patentee 'by that department of the government, to which the alienation of the public land is confided, the remedy of the aggrieved party must be sought by him in a court of equity, if he possess such an equitable right to the premises as would give him the title if the patent were out of the way. If he occupy with respect to the land no such position as this, he can only apply to the officers of the government to take measures in its name to vacate the patent or limit its operation.”
These authorities and the authorities cited in the cases sufficiently sustain the position assumed by appellant, to the effect that they could not, by ejectment or other proceedings at law, legitimately inquire into the validity of the defendant company’s title. That it was from necessity their duty, and under the decisions their right, to appear in a court of equity and therein assert their equitable right to the disputed land.
This is not a proceeding between the government and individuals, but a proceeding between private parties, wherein it is insisted that the claim or title of one is inequitable and void, because from its inception there has been no compliance *124 with the provisions of the state and federal statutes relative to the location and acquisition of title to mining claims, and that before any fight or title had inured to the Justice Mining Company, complainant, as a citizen of the United States, had made the proper location and secured the right as such citizen, by full compliance with the law, to acquire the title to the disputed land.
In the Eureka Case, 4 Saw. 319, Field, J., uses this language : “ A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency it is ironclad against all mere speculative inferences. But it is equally as clear, and. as well settled, that, if the statute has not been complied with, and a patent issued without authority of law, no substantial title is acquired.”
“A patent issued without authority of law is void.” U. S. v. Chapman, 5 Saw. 528; Stoddard v. Chambers, 2 How. 285; Morton v. Nebraska, 21 Wall. 660; Sherman v. Buick, 93 U. S. 216.
Believing the foregoing to be the correct doctrine, we have but to quote further in support of complainant’s bill.
In Johnson v. Towsley, supra, it is said, “ That if for any reason recognized by courts of equity as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience and by the laws which congress has made upon the subject, it ought to go to another, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title.” Stark v. Starrs, 6 Wall. 402.
“ The relief given in this class of cases is founded on the theory that the title which has passed from the United States to the defendant, inured in equity to the benefit of plaintiff, and a court of chancery gives effect to this equity, according to its forms, in several ways.” Silver v. Ladd, 7 Wall. 228.
The supreme court of this state has practically determined this question in the case of Seymour v. Fisher et al., 16 Colo. 189.
*125 In the case of Seymour v. Fisher et al., the court uses this language: “ It is needless to say that an investigation by a court of equity in the case now supposed is not for the purpose of attacking or annulling the patent itself; its object is to give the benefit of the patent to the proper party; the party who in equity is entitled to the premises. And when the foundation is laid by proof showing clearly the fraud of the applicant, whereby the complaining party has been kept in ignorance of the existence of the patent proceedings, the court may consider the right of such party to the ground in controversy.” Vide : Craig v. Leitensdorfer, 123 U. S. 189.
In Belk v. Meagher, 104 U. S. 279, Waite, C. J., delivering the opinion of the court said: “ The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. Locations can only be made where the law allows it to be done. Any attempt to go beyond that will he of no avail. * * * The right to possession comes only from a valid location. Consequently, if there is no location there can be no possession under it. Location does not necessarily follow from - possession, but possession from location.”
It is needless to cite further authorities in support of the conclusion here reached. We are clearly of the opinion that so far as the record in this case at present discloses, the Justice Mining Company’s title, based as it is upon an invalid location, cannot be supported by authority, reason, or-statute.
To prove and establish a right to a patent from the government of the United States, it was clearly the duty of the party seeking the title, under the provisions provided by statute, to prove a valid location and a thorough compliance with the mineral laws.
If the allegations of the bill be true, such proof could not be made and cannot now be made, and the government officials were not authorized to issue a certificate of purchase or a patent for the land.
*126 We think that the court erred in sustaining the demurrer to the complainant’s bill.
The .judgment must be reversed and the cause remanded for further proceedings.

Reversed.

Bissell, J., having been of counsel, not sitting.