ST. PAUL & N. P. RY. CO. v. ST. PAUL, M. & M. RY. CO. et al.

(Circuit Court, D. Minnesota, Third Division. August 24, 1893.)

1. PUBLIC LANDS—GRANTS IN AID OF RAILWAYS—ACTS OF CONGRESS AND MINNESOTA LEGISLATURE—EXCESSIVE CONVEYANCE VOIDABLE.

Under the acts of congress granting lands to Minnesota to aid in the building of railways, and the acts of the territorial and state legislatures granting such lands to railway companies, the lands so granted were required to be selected from a territory coterminous with the railroad, and the governor of Minnesota had authority to make deeds of land as fast as the roads were constructed. *Held*, that such deeds conveying lands in advance of the point to which the road was actually constructed were not void, but only voidable.

2. SAME—REVOCATION OF GRANT BY MINNESOTA—CONSTITUTIONAL LAW.

The lands were held by Minnesota in trust only for the purpose of aiding in the construction of railways; and where the governor of the state erroneously conveyed to a railroad company certain lands lying beyond the point to which the road had been constructed, and several years thereafter elapsed without the construction of such road, it was the right and duty of the state legislature to declare such lands forfeited without merger or extinguishment, and to grant them anew for the same purpose, as was done by the act of March 1, 1877.

3. SAME—SECOND GRANTEE — RIGHT OF ACTION—WHEN ACCRUED—ACT MINN. MARCH 1, 1877.

Under Act Minn. March 1, 1877, declaring forfeited to the state certain lands theretofore conveyed to railway companies, and granting such lands to another company, the second grantee, upon compliance with the conditions of the grant, was enabled to maintain an action to recover such lands or to quiet title thereto; but such right of action accrued only so fast as the company constructed its road, and limitation and laches would run against it only from that date.

4. SAME—INCLUSION OF FORFEITED LANDS IN PRIOR MORTGAGE.

Under the acts of congress granting to Minnesota lands in aid of railways and the acts of the legislature of Minnesota granting such lands to railway companies, mortgages of the property of the grantee companies with "the lands appertaining to the roads" do not include lands erroneously conveyed to such grantees in excess of the amount warranted by said acts.

In Equity. Bill by the St. Paul & Northern Pacific Railway Company against the St. Paul, Minneapolis & Manitoba Railway Company and others to obtain possession of certain lands, and to quiet complainant's title thereto. Decree for complainant.

Pierce Barnes, for complainant.
M. D. Grover, for defendants.

WILLIAMS, District Judge. Under the voluminous statement of facts many questions of law are presented by the learned counsel in their arguments, but with the views I entertain of the case I deem the consideration of but two of them necessary to its proper determination.

The governing principle of all these various acts of congress and of the territorial and state legislature was to grant lands to the state of Minnesota to aid in the construction of railroads in the then territory and future state of Minnesota; and the proposi-

tion that the lands granted were to be exclusively applied in the construction of that road for and on account of which such lands were granted, and should be disposed of only as the work progressed, and be applied to no other purpose whatsoever, is prominently announced in all said acts of congress. The acts further state that the lands—especially the place lands—so awarded to any railroad or branch railroad shall be selected from a territory coterminous with said railroad or branch thereof. Applying this latter principle, it is difficult to see what real claim the defendants originally had or now have to any lands north of a point called Watab. It is not claimed that the defendant company constructed any road north of said place, or became in any manner entitled to the place lands north thereof; and, as a matter of fact, they were not entitled to any indemnity lands between Watab and Brainerd, because none of said lands were located within a territory coterminous with the road constructed by the defendant company. So it must follow that the deeds executed to the defendant company by the governor of the state of Minnesota containing lands north of Watab are either absolutely void, or voidable as to the quantity of land contained therein in excess of the amount to which the defendant company was entitled. The very learned counsel representing complainant insists strenuously, and cites numerous authorities to support his position, that the deeds were absolutely void; the governor being, as he contends, without authority to execute the same. Among the cases cited are Smelting Co. v. Kemp, 104 U. S. 644; Doolan v. Carr. 125 U. S. 626, 8 Sup. Ct. Rep. 1228; Sherman v. Buick, 93 U. S. 209, 216; Polk's Lessee v. Wendal, 9 Cranch. 87; Van Wyck v. Knevals, 106 U. S. 360, 1 Sup. Ct. Rep. 336; Wilcox v. Jackson, 13 Pet. 511; Iron Co. v. Cunningham, 44 Fed. Rep. 819; Anderson v. Roberts, 18 Johns. 527; Railroad Co. v. Davison, (Mich.) 32 N. W. Rep. 726. Without taking up or referring to these cases seriatim, it is sufficient to say that none of them are analogous to this case. That the governor of the state of Minnesota had authority to make deeds of land to any company constructing the roads, as fast as they were constructed, when any 20 miles, or, according to another act, when any 10 miles, of the road were constructed, is unquestioned; and, having that authority, it was necessary for him to determine how far the lands had been earned by the construction of the road; and if he erred as to the amount of lands to which any constructing company was entitled it was a mere error in judgment of the officer having authority to make the deeds; and the efforts of learned counsel on either side to demonstrate to the court the exact or approximate number of acres to which the respective companies are entitled are quite conclusive that if the executive, in making the deeds, did err, it was an error of judgment, and a misconception of the facts, into which any one was very liable to fall. So I am of the opinion that the most that can be said in relation to these deeds is that they contained lands in excess of the number of acres that should have been awarded by the executive to the defendant corporation,

and that the deeds were not void absolutely, but only voidable as to the number of acres in excess of what should have been conveyed by them.

This brings me to the consideration of the question of the right of the plaintiff to maintain this action, for if it be true that the deeds are not absolutely void, but voidable as to the excess, it would seem to follow that the defendant corporation holds the lands in trust for whomsoever was entitled to said excess, and, that being the case, this action cannot be maintained, because it is clearly barred by the statute of limitations of the state of Minnesota, and also by the bar of laches which should clearly prevail against the complainant in this case if it has no other right to maintain its action and to obtain the relief sought for in the bill of complaint. Upon this point it is unnecessary to cite authorities, it being conceded by counsel for complainant.

We now come to the consideration of the other important question in this case, and that is as to the force and effect of the act of the legislature of the state of Minnesota of March 1, 1877. The first section of that act is as follows:

"That the rights privileges, franchises, grants of land, and property heretofore held by the St. Paul & Pacific Railroad Company appertaining to the uncompleted portions of that line of railroad extending from Watab to Brainerd, are hereby declared forfeited to the state, without merger or extinguishment, but are hereby preserved, continued and conferred upon the terms and conditions as in this act provided."

Said act then goes on to provide that if a certain company called the "Bond Company" shall construct said railroad from Watab to Brainerd, and other certain branches which it is unnecessary to mention here, within a given time, it shall be entitled, under certain conditions, to said lands. It then further provides that:

"In case any forfeiture of any portion of the said line of road should occur under the provisions of this section, then and in that case, any company or corporation now organized, or that may hereafter organize, having authority from this state to build, maintain and operate a line of railroad within or through this state, may succeed to and acquire the right to complete, own, maintain and operate the uncompleted portions of said line of railroad mentioned in this section, by filing with the governor a written notice of its desire and intention, under and subject to the provisions of this act, to complete, equip, maintain and operate the then uncompleted portions of said line of railroad. Work shall be commenced thereon within thirty days after the filing of such notice, or as soon thereafter as the state of weather shall permit, and be prosecuted to completion at the rate of not less than sixty miles per year, until all the same has been completed. But, upon default to commence work or to prosecute the same to completion within the time aforesaid, such company shall forfeit all right to complete, maintain, or operate the portion of said line remaining uncompleted at the time of such default, without further act or ceremony, to be used and granted for the construction of such line of road."

Further still, the act provides that certain grants of land mentioned there "shall be reserved and retained by the state to be used by it for the payment of claims, incurred for work and material furnished in the construction of said lines of railroad; statements of

which claims were filed in the state auditor's office in pursuance of an act of the legislature approved February 21, 1874."

Under the provisions of this act the complainant corporation constructed a road from Watab to Brainerd. It also expended large sums of money in the payment of the claims mentioned in that act, for the payment of which the state had reserved lands not to exceed 40,000 acres in amount; and it now claims that it is entitled to have all clouds on its title to the lands so earned and conveyed to it removed that now exist by reason of the said lands being embraced in the deeds executed to the defendant corporation hereafter referred to, and that it be held to be entitled to receive from the state a conveyance of all such lands not heretofore conveyed to it by the state.

The questions arising under the first section of this act are: Did the legislature have the right to pass the act? And did it affect the lands mentioned in this suit after they had been conveyed by the governor to the defendant company by the deeds hereinbefore mentioned? It must be borne in mind that the state of Minnesota by the acts of congress held these lands in trust to carry out the sole purpose and intention of said acts, viz. to aid in the construction of railroads in the territory and future state of Minnesota; and the lands were to be applied to that, and to no other, purpose. And when it was found that a term of years had elapsed since the conveyance, and no portion of said road from Watab to Brainerd had been constructed, although the lands which were intended to aid in the construction of that road had been conveyed, it was not only within the power of, but was an imperative duty resting upon, the legislature to take such action as would best carry out the letter and spirit of the act of congress. The state represented the sovereignty that had granted the lands, and, so doing, it certainly had the right to declare all lands that had not been earned forfeited to the state, without merger or extinguishment, and apply them, as they were intended to be applied, to aid in the construction of this road. This the legislature did, and nothing more. It strictly preserved by the terms of the act the rights of all individuals who had settled upon the lands, or had acquired any rights therein. It preserved the rights of all parties who had expended any money in the building of any road in the construction of which these lands were intended to aid. It compelled any company that constructed the road, and became entitled to the lands, to pay out large sums of money for this purpose. The act was in all respects carefully drawn; all of its provisions were fair and equitable; and I think it secured to the complainant herein, when it complied with the act, the right to the lands, and therewith the right to maintain any action for their recovery, or to quiet any title that might exist adverse to it; and as it became entitled to receive a deed for the lands only as fast as it constructed the road, so its right of action began when it was entitled to receive the lands from the state. A sufficient length of time had not elapsed from the period at which it was entitled to the possession or to

receive the legal title to the lands prior to the commencement of this action to prevent the plaintiff from maintaining this action either upon the statute of limitations or the claim of laches.

I am not unmindful of the contention by defendants that these lands were embraced in the mortgage of June 2, 1862, made by the St. Paul & Pacific Company, the mortgage of October 1, 1865, made by the First Division of the St. Paul & Pacific Company, and the mortgage of April 1, 1871, made by the St. Paul & Pacific Company, and that upon the foreclosure of said mortgages all of the lands embraced therein were purchased by the defendant company, and that for that reason the defendants' right to them has been secured. Upon the view that I have of these mortgages as construed in the light of the various acts herein referred to, these lands were not embraced in the mortgages referred to. They were not put in the deeds by any description as to section, township, or range, and the only language that purports to convey them at all by the mortgages is the expression, "lands appertaining to the roads." So, if those lands from Watab to Brainerd did not appertain to the road constructed by the mortgagors, then it must be that they were not embraced in the mortgages, and did not pass to any one by foreclosure or sale thereunder. The act of congress granting these lands was both a grant and a law. Inasmuch as it was plainly stated in the act that these lands were only to inure to the company or party who actually constructed the road adjacent to them, if at that time such road had not been constructed, that grant, which was also a law, was a notice to all persons that the mortgagor had no right or title to those lands. So, in my judgment, that contention of the defendant must fail.

Entertaining these views, I am of the opinion that the complainant is entitled to recover as prayed for in the bill of complaint, and to have conveyed to it all lands mentioned in the complaint lying north of Watab that are coterminous with the line of said railroad extending north from Watab to Brainerd, and that its title be quieted to those lands, and all clouds removed that now may exist upon its title to the same.